181 N.J. Super. 172 (1981)
436 A.2d 978
BOTTOM LINE IMPORTS, PLAINTIFF,
v.
KOREA SHIPPING CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division Union County.
Decided June 29, 1981.
*173 Michael F. Chazkel for plaintiff.
Michael D. Wilson for defendant.
McGRATH, J.S.C.
This matter comes before the court upon defendant's motion for partial summary judgment.
This is an action brought by a manufacturer of goods, Bottom Line Imports, Inc., against a carrier of goods, Korea Shipping Corporation, to recover for alleged damage to six shipments of cargo which were carried aboard various vessels of defendant from Japanese and Korean ports to Jersey City, New Jersey, at various times in 1979.
Defendant contends, by this motion, that the cargoes carried under the bills of lading identified in paragraph 3E and 3F of plaintiff's amended complaint were delivered to plaintiff by defendant more than one year prior to the institution of the within action and, therefore, the claims related to these bills of lading are barred by the applicable statute of limitations.
The statute of limitations applicable to the within action is that found in § 3(6), of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. (herein "COGSA"). That COGSA applies *174 to the within action is not disputed by plaintiff. Section 1300 provides:
Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter.
Section 1312 goes on to provide:
This act shall apply to all contracts for carriage of goods by sea or from ports of the United States in foreign trade.
It is undisputed that the two shipments which are the subject of this motion were carried from Japanese and Korean ports to Jersey City, New Jersey, and that the within action relies upon bills of lading as evidence of the contracts of carriage forming the basis of plaintiff's complaint. Therefore, by the terms of §§ 1300 and 1312, COGSA is applicable to the within action.
Section 1303(6) provides, in pertinent part:
In any event, the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods....
The facts with respect to the delivery of the shipments identified in paragraph 3E and 3F of plaintiff's amended complaint are not in dispute. Therefore defendant's motion for partial summary judgment based upon the time bar of the statute of limitations is properly before the court for resolution at this time.
The subject shipments were carried aboard the vessel M.V. Korean Leader, Voyage 21E, which arrived at Jersey City, New Jersey, on May 15, 1979. Notice of the anticipated arrival date of the M.V. Korean Leader, Voyage 21E, had been sent to plaintiff seven to ten days prior to the actual arrival of the vessel. The cargo was discharged over the next few days following arrival and delivered into the custody of Global Terminal and Container Services of Jersey City, New Jersey. On June 20, 1979 the United States Customs Service took possession of the cargo and directed the cargo to be sent to General Order of Floyd Johnson, Inward Freight Manager for defendant, due to the failure of plaintiff to secure proper United States Customs documentation. On that same date, the cargo, pursuant to *175 United States Customs directions, was delivered into the custody of Custom Cartage, the trucking firm employed by the United States Customs Service for the purpose of transporting cargo into General Order. Thereafter plaintiff took custody and control of the two shipments of cargo on September 12 and 14, 1979. The complaint in this action was filed on June 25, 1980.
The issue crucial to the resolution of the within motion is a determination as to when "delivery" of the subject shipments occurred within the meaning and intendment of § 1303(6), which speaks of institution of suit "within one year after delivery of the goods...." (emphasis added). If the subject shipments were deemed "delivered" on a date more than one year prior to the institution of the within action, that is before June 25, 1979, then plaintiff's complaint with respect to these two shipments would be time-barred and must be dismissed, since the time-bar exclusion extinguishes not merely the remedy but the cause of action itself. See American Hoesch v. S.S. Aubade, 316 F. Supp. 1193, 1194 (D.S.C. 1970); MVM Inc. v. Saint Paul Fire & Marine Ins. Co., 156 F. Supp. 879, 883 (S.D.N.Y. 1957), rev'd on other grounds sub nom. Saint Paul Fire & Marine Ins. Co. v. United States Lines Co., 258 F.2d 374 (2 Cir.1958), cert. den. 359 U.S. 910, 79 S.Ct. 587, 3 L.Ed.2d 574 (1959). On the other hand, if the goods were deemed "delivered" on a date within one year of the filing of plaintiff's complaint, the complaint must stand with respect to these two shipments.
The issue of when delivery takes place for the purpose of the commencement of the running of the one-year statute of limitations provided for in § 1303(6) was considered by the court in American Hoesch, Inc. v. S.S. Aubade, supra. That case involved a suit by a consignee against a ship and carrier for damage, while in transit, to 162 bundles of light steel beams. The allegedly damaged cargo was discharged from defendant vessel on December 8, 1968. Into whose custody the goods were discharged on that date was not demonstrated to the court. However, it was clear that the South Carolina Ports Authority *176 took possession of the goods on December 11, 1968. Suit was instituted on December 9, 1969.
Defendant moved for summary judgment on the ground that the one-year limitation began to run with the discharge of the goods from the vessel on December 8, 1968, with the result that the complaint filed on December 9, 1969 was time-barred. In support of that position, defendant relied upon language in the case of C. Tennant Sons & Co. v. Norddeutscher Lloyd, 220 F. Supp. 448 (E.D.La. 1963), to the effect that since discharge of the goods terminates the carrier's duties, rights, responsibilities and liabilities, this is the point at which the goods are deemed "delivered" so as to commence the running of the statute of limitations set forth in § 1303(6). The American Hoesch court, however, distinguished the situation in the Tennant Sons case, wherein the goods are unloaded directly into the plaintiff's custody, from the situation wherein the goods are unloaded into the custody of one other than the consignee or his agent. The American Hoesch court agreed that in the former situation the time period does begin to run with the discharge. However, the court went on to find that the term "delivery" as used in § 1303(6) is not synonymous with the term "discharge." The court found that the term "delivery" "denotes a two-party transaction in which the consignee or an agent would have the opportunity to observe defects." (At 1196). The court went on to find that
... delivery implies mutual acts of the carrier and the consignee.... It is a more inclusive term than `unloading', implying acceptance or agreement to accept by or, at least communication to, the consignee if not actual passing of possession to the consignee, coupled with relinquishment of possession or control by the carrier. [at 1196; emphasis supplied; citation omitted].
The American Hoesch court denied defendant's motion for summary judgment on the ground that the record before the court failed to show if, and when, defendant's ship lost control of the goods, and the time, place of, and circumstances surrounding plaintiff's obtaining control, the court concluding that the term "delivery" is not synonymous with control but delivery "implies a change of possession, a change of control." (at 1196).
*177 In the later case of National Packaging Corp. v. Nippon Yusen Kaisha, 354 F. Supp. 986 (N.D.Cal. 1972), the court stated with respect to § 1303(6);
Just as "delivery" does not mean actual physical transfer, neither does it mean discharge from the ship, without more. Between these two extremes is a period in which the consignee should receive notice that the goods have been discharged and should have a reasonable opportunity to remove the goods or place them under proper care and custody. [at 987]
Defendant contends that it relinquished control of the subject shipments on June 20, 1979 when the United States Customs Bureau took custody of the cargo pursuant to law and directed that it be sent to General Order. Furthermore, defendant contends, prior notice was given to plaintiff of the arrival date of the cargo at the assigned port. Therefore, "delivery" of the subject shipments was made on June 20, 1979, since under American Hoesch prior notice to the consignee of the arrival of the cargo and relinquishment of control by the ship can constitute "delivery."
In support of its contention that it relinquished control of the cargo on June 20, 1979, defendant cites various 1979 U.S. Customs regulations contained in 19 C.F.R. to the effect that when Customs takes possession of impounded cargoes, it takes and holds them at the expense and risk of the owner or importer of the cargo; that only the owner or importer can obtain their release and that the importing vessel has no involvement with the cargo whatsoever, except in the event the vessel owner imposes a lien on the cargo or its proceeds for unpaid freight, demurrage or the like. 19 C.F.R. §§ 4.37, 4.38, 127, 141.1(b) and 141.5. Furthermore, it has been held that after customs takes possession of impounded cargo it becomes a bailee of the cargo, for the benefit of cargo owner. See, e.g., United States v. Thomas, 82 U.S. (15 Wall) 337, 21 L.Ed. 89 (1872); Burke v. Trevitt, 4 Fed.Cas. 745 (D.Mass. 1860); Averill v. Smith, 84 U.S. (17 Wall.) 82, 21 L.Ed. 613 (1872).
Defendant concludes that since control of the cargo had clearly passed out of its hands when the cargo was seized by *178 U.S. Customs authorities, it was constructively, if not actually, delivered to plaintiff, which is all that is necessary pursuant to the American Hoesch decision.
The court finds that the cargo identified in paragraphs 3E and 3F of plaintiff's amended complaint was, for the purpose of the commencement of the running of the one-year statute of limitations provided for in § 1303(6), delivered to plaintiff on June 20, 1979, the date the cargo was put by defendant into the custody and control of U.S. Customs officials. This determination is wholly consistent with the ruling of the court in American Hoesch, since, in that case, summary judgment was denied solely on the basis of lack of evidence as to the time of relinquishment of control of the cargo by defendant vessel and lack of evidence as to the time of the obtaining of control of the cargo by plaintiff. In the instant action, it is undisputed that defendant relinquished control of the subject cargo on June 20, 1979 and that plaintiff obtained actual possession of the cargo on September 12 and September 14, 1979. It is also undisputed that defendant notified plaintiff of the date and place of arrival of the cargo seven to ten days prior to the actual arrival and that the cargo was not actually delivered to plaintiff upon arrival because of plaintiff's own failure to secure proper Customs documentation.
Pursuant to the decisions in the American Hoesch and National Packaging cases, delivery occurs, for the purpose of the commencement of the running of the statute in § 1303(6), when the shipper relinquishes control of the goods, after having notified the consignee in advance of relinquishment of their arrival so that the consignee may take possession of the cargo and inspect for defects.
In conclusion, then, defendant's motion for partial summary judgment dismissing plaintiff's claims with respect to paragraphs 3E and 3F of the Amended Complaint is hereby granted.