LITHOTIP, CA, Plaintiff,

v.

S.S. GUARICO, her engines, boilers, etc.,
Compania Anonima Venezolana de
Navegacion, Defendants.

No. 82 Civ. 3216 (MEL).

United States District Court,
S.D. New York.

Sept. 6, 1983.

Donovan, Maloof, Walsh & Kennedy, New York City, for plaintiff; Judith A. Machmer, New York City, of counsel.

Giallorenzi & Campbell, New York City, for defendant Compania Anonima Venezolana de Navegacion; Edward A. Keane, New York City, of counsel.

LASKER, District Judge.

In this action for cargo damage and shortage, the carrier, Compania Anonima Venezolana de Navegacion ("Venline"), moves pursuant to Fed.R.Civ.Pr. 56 for summary judgment on the grounds that the action is time-barred. The shipper, Lithotip, CA ("Lithotip"), cross-moves for summary judgment, contending that the action is timely and that there are no genuine issues of fact with regard to the carrier's liability for the loss and damage to the subject cargo.

The cargo in question (possibly minus the shortage amount) arrived at its destination, the Port of La Guaira, Venezuela, on April 30, 1981. It was discharged the same day into the custody of the Instituto Nacional de Portos ("INP"), a government body responsible for port operations including the receiving, stevedoring and warehousing of discharged cargo. At some point, Lithotip, the consignee, was notified of the arrival of the cargo (at argument, both parties indicated that the date of notification was unknown) and, between May 18, 1981 and May 25, 1981, Lithotip took delivery of the cargo. The instant complaint was filed on May 18, 1982.

The Carriage of Goods by Sea Act ("COGSA") which both parties agree covers the instant action, provides for a one-year statute of limitations. 46 U.S.C. § 1303(6). Section 1303(6) specifies that the one year

period commences with the "delivery of the goods."[1] Thus, if "delivery" is deemed to have occurred at any time prior to May 18, 1981, the action is time-barred. The parties dispute the meaning, for COGSA purposes, of the term "delivery."

Venline argues that because the Harter Act, 46 U.S.C. §§ 190–196, governs the rights of the parties after the cargo leaves the vessel's tackle, the word delivery in § 1303(6) of COGSA should be interpreted as the term is interpreted under the Harter Act. Under that Act, the carrier is not responsible for damage to the cargo after "proper delivery," which has been defined by case law to mean, *inter alia,* delivery to the custody of a duly authorized port authority. *Allstate Insurance Co. v. Imparca Lines,* 646 F.2d 166 (5th Cir.1981).

In the alternative, Venline argues that, for COGSA § 1303(6) purposes, delivery should be interpreted as defined by the bill of lading, which provides:

"All responsibility of the Carrier in any capacity shall altogether cease and the goods shall be considered to be delivered ... and at the risk and expense of the consignee when delivered to lighters or other craft or put into possession of customs or other authorities, or on public dock or in public warehouse, the customs or other authorities or persons taking possession of the goods being deemed to have taken delivery thereof as agent of the shipper, consignee and owner of the goods."

Clause 12, Bill of Lading, Exhibit 2 to Affidavit of Edward A. Keane.

Lithotip answers that interpretations of The Harter Act are inapposite to interpretation of the COGSA statute of limitations because the considerations pertinent to the two statutes are different. In particular, it is argued that the Harter Act uses the term delivery to designate the time at which the carrier is no longer liable for damage to the cargo, whereas COGSA uses the term to specify the time at which the statute of limitations begins to run. The cases which have interpreted COGSA itself, Lithotip asserts, have all required at least notification to the consignee before delivery is deemed to have occurred. With respect to the bill of lading, Lithotip contends that the clause in question is pertinent to the Harter Act-type question, *i.e.,* when the carrier's liability terminates; it does not purport to refer to the statute of limitations, and should not be read to define "delivery" for all possible purposes.

Lithotip further asserts that if it prevails on the statute of limitations question, it is entitled to the entry of summary judgment because there are genuine fact issues as to Venline's responsibility for the cargo damage and loss.

\* \* \* \* \* \*

The Harter Act is concerned with the circumstances under which a carrier's responsibility for damage to cargo terminates. Thus, in *Allstate Insurance Co. v. Imparca Lines, supra,* relied on by Venline, the court held that because discharge to the port authority constituted "proper delivery" under the Harter Act, the carrier could not be held liable for damages occurring to the cargo in the port authority's custody. The court observed that after the carrier had discharged the cargo to the port authority, it was "powerless to interfere with the exclusive operation of the port by the [port authority]." *Id.* at 169. Clearly, it would have been unfair to hold the carrier liable for events occurring after it was "powerless to interfere."

Interpretation of the accrual provisions of a statute of limitations requires consideration of different factors. One significant item is the question of fairness to the plaintiff: it would generally be deemed unfair to start the clock ticking before a plaintiff even has notice that he has been wronged. Were we simply to graft the Harter Act definitions onto COGSA, the cause of action would accrue when the

---

1. Section 1303(6) states:
 "[T]he carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered."

goods were discharged to the port authorities, whether or not the consignee had notice that the vessel had landed. Because of the disjointed result which would flow from such an interpretation, we conclude that cases interpreting the Harter Act are inapposite, and turn to the decisions interpreting COGSA § 1303(6), which is, after all, the provision in question.

Of the five cases found in which COGSA § 1303(6) has been interpreted, four have concluded that "delivery" does not take place until, at the least, the consignee has been notified that the cargo is available to be picked up. The court in *American Hoesch, Inc. v. Steamship Aubade,* 316 F.Supp. 1193 (D.S.C.1970), reasoned that:

> " [D]elivery ... denotes a two-party transaction in which the consignee or an agent would have the opportunity to observe defects.... [It] implies mutual acts of the carrier and the consignees.... It is a more inclusive term than 'unloading,' implying acceptance or agreement to accept by, or at least communication to, the consignee, if not actual passing of possession to the consignee ... The mere discharge of the cargo is not delivery."

*Id.* at 1196.

Moreover, as the court noted in *Milikowsky Brothers, Inc. v. W.F. Kampman's Bevrachtingsbedrijf,* 1969 A.M.C. 111, 112 (N.D. Ill. Sept. 4, 1968), § 1303(6) "explicitly employs the word 'delivery,' rather than using the term 'discharge' as in numerous other parts of the statute (see, e.g., sections 2, 3(2), 6, 7, and 11)." *See also National Packaging Corp. v. Nippon Yusen Kaisha,* 354 F.Supp. 986 (N.D.Cal.1972) ("delivery" under § 1303(6) requires "discharge plus notice plus opportunity to receive"); *Bottom Line Imports v. Korea Shipping Corp.,* 181 N.J.Super. 172, 436 A.2d 978, 981 (Super.Ct. N.J.1981) ("[D]elivery occurs, for the purpose of the commencement of the statute in § 1303(6), when the shipper relinquishes control of the goods, after having notified the consignee in advance of relinquishment of their arrival so that the consignee may take possession of the cargo and inspect for defects.").

We find persuasive the opinions of the courts cited above that "delivery," both as the term is used in everyday language, and as it appears to have been intended in the context of the statute, requires, if not receipt by the deliveree, at least notice to him and opportunity to accept delivery. As Judge Learned Hand explained in another context, "[d]elivery is a mutual transaction which requires the consent of the person who is to take possession, as well as that of the one who gives it." *F.E. Grauwiller Transp. Co., Inc. v. Gallagher Bros. Sand & Gravel Corp.,* 173 F.2d 708, 711 (2d Cir.), *cert. denied sub nom. Shamrock Towing Co., Inc. v. F.E. Grauwiller Transp. Co., Inc.,* 338 U.S. 824, 70 S.Ct. 71, 94 L.Ed. 500 (1949).

Venline's argument that delivery to the INP should be deemed delivery to Lithotip is unpersuasive. Nothing in the record indicates that INP had a duty to inspect the cargo for loss or damage. As discussed above, a principal distinction between "discharge" and "delivery" is that delivery implies an opportunity for the consignee or his agent to observe defects. *See American Hoesch, supra.* Where the bailee is an agent of the consignee only for the purpose of warehousing the cargo until the consignee can retrieve it, as, on the present record, INP appears to have been, the opportunity to inspect for defects does not arise until the goods are made available to the consignee or to an agent that does have the duty to inspect.

Nor is this conclusion altered by the language of Clause 12 of the Bill of Lading, quoted above. Read as a whole, the clause pertains to delivery for the purposes of the Harter Act; that is, the clause operates to shift the risk of loss to the shipper upon "delivery" to the port authority, "delivery" being defined, for those purposes, to be discharged to such port authority. In the absence of any indication in the bill of lading that it purports to alter the statutory period of limitations, the use of the word

840

"delivery" in another context will not be deemed to do so.

 Accordingly, we conclude that the COGSA statute of limitations began to run on the date on which Lithotip was notified of the arrival of the cargo and given an opportunity to retrieve it. However, the record does not indicate the date on which Lithotip was given notice, and, at argument, counsel advised the Court that the date was unknown. The statute of limitations being an affirmative defense, it is the burden of the defendant who seeks to invoke it to establish "the prerequisites for such invocation." *Perez v. Costa Armartori, S.P.A.,* 465 F.Supp. 1211, 1213 (S.D.N.Y. 1979). Because Venline has not proven that Lithotip was given notice and an opportunity to retrieve the cargo more than one year before the complaint was filed, the statute of limitations defense fails.

Finally, we consider Lithotip's cross-motion for summary judgment. Venline has failed to set forth any disputed facts, nor has it responded to the contentions in Lithotip's 3(g) statement that Venline has admitted by its own documents that it is liable for the loss and damage of the subject cargo.[2] At oral argument, Venline conceded its failure to oppose Lithotip's cross-motion for summary judgment properly, but requested a brief opportunity to take discovery prior to being required to do so. Because we believe that actions should be decided on their merits whenever possible, Venline will be allowed 30 days from the date of this opinion to pursue discovery and submit papers in opposition to Lithotip's motion. Should Venline fail to submit the requisite papers in opposition, Lithotip may apply for entry of summary judgment by default at the conclusion of the 30 day period.

Venline's motion for summary judgment is denied. Decision on Lithotip's cross-motion for summary judgment is deferred for 30 days.

It is so ordered.

2. In its 3(g) statement, Venline simply asserts that there are genuine issues as to its liability. It does not indicate what those issues might be,

nor does it respond to Lithotip's contention that it has already admitted liability by issuing a certificate of loss.