## ATLANTIC MUTUAL INSURANCE COMPANIES, Plaintiff,

v.

## M/V "BALSA 38", her engines, boilers, etc., and Tsacaba Co. Ltd., and Kersten Shipping Agency, Inc., Defendant.

## DOWA LINE COMPANY, LTD., and Tsacaba Shipping Co., Ltd., Defendants and Third–Party Plaintiffs,

v.

## KIM–SAIL, LTD., Third–Party Defendants.

## No. 88 Civ. 0364 (CSH).

United States District Court, S.D. New York.

Sept. 23, 1988.

As Amended Nov. 28, 1988.

For Deposit Only
Special Account 012–043478"
*Spielman,* 469 N.Y.S.2d at 71, 456 N.E.2d at 1194.

**166**

Purrington, McConnell & Agus, New York City (Stephen A. Agus, of counsel), for plaintiff Atlantic Mut. Ins. Companies.

Standard, Weisberg, Heckerling & Rosow, New York City (Lewis Herman, of counsel), for defendants Kersten Shipping Co. Ltd. and Kim–Sail Co. Ltd.

Walker & Corsa, New York City (Leroy S. Corsa, Kirk M. Lyons, of counsel), for defendants Dowa Line Co., Ltd. and Tsacaba Shipping Co., Ltd.

## AMENDED MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

In this admiralty action for cargo and shortage, defendants move to dismiss the complaint as time-barred.

## BACKGROUND

Plaintiff Atlantic Mutual Insurance Co. sues as insurer and subrogee of Universal Cooperatives, Inc. Universal, a Minnesota Corporation, was the consignee and receiver of bales of twine covered by six separate bills of lading which were transported on board the M/V BALSA 38 from Salvador, Brazil to Richmond, Virginia. The vessel arrived at Richmond and docked on January 5, 1987. Defendant Tsacaba Shipping Co., Ltd. is the registered owner of the BALSA 38. Defendant Dowa Line Co., Ltd. was the time charterer. Third-party defendant Kim–Sail Ltd. was the sub-time charterer from Dowa. Defendant Kersten Shipping Agency, Inc., acted as agent for Kim–Sail.

The bales of twine were loaded into the vessel at Salvador stowed on a total of 1,600 wooden pallets. The bales of twine comprising the total shipment were neither identical nor indistinguishable. That appears from the faces of the six bills of lading. There were different quality marks: Gold Label Baler, Gold Label Binder, and Diamond Baler. Lots of different length and weight were included in the total shipment: Gold Label Baler in 9,000, 10,000 and 16,000 foot lengths; Gold Label Binder in 600 foot lengths; and Diamond Baler in 9,000 and 10,000 foot lengths. The weight of the bags differed: the Gold Label Binder had a weight of 50 lbs. per bag, while the rest of the shipment was in bags of 40 lbs.

The cargo receivers appointed Captain C.G. Porter, a cargo surveyor from Duluth, Minnesota, to attend to the discharge of the 1,600 pallets of baler twine from the BALSA 38 at Richmond. Captain Porter has attached a copy of his survey report of January 30, 1987 to his affidavit. The survey, whose accuracy defendants do not challenge, recites that Captain Porter attended to the discharge on January 5 and 6, 1987, and also oversaw sorting of damaged twine on January 7, 8, 9, 12, 13, 14, 23, and 24. On the last date, a joint survey was conducted with a surveyor representing Kersten.

The Porter survey recites that on opening of the hatches, the pallets "on top were in some disarray." Damage to some of the pallets occurred as the stevedores discharged them from the holds with forklifts. The survey advises:

> "Pallets re-stacked in the hold often had three B/L's on the same pallet, with no attempt made to keep separation of B/L's, damaged from good twine, or consistent count on each pallet. As a result by time pallets were at rest in warehouse, approximately one half had damage or were broken down on non-uniform pallet loads. A count was impossible. On 6 January, sent Telex to Kersten of intention to file damage claim."

Captain Porter expands upon these circumstances, and the difficulties they caused, in his affidavit at ¶¶ 5 and 6:

> "5. Some difficulty was experienced in the wings and with overstowed pallets. In result, pallets restacked in the hold often had three Bills of Lading on the same pallet, with no attempt made to keep a separation for Bills of Lading, damaged from good twine, or any consistent count on each pallet. A complete copy of my report is annexed hereto as Exhibit 'A'.
>
> 6. Owing to the aforementioned circumstances, by the time pallets were placed at rest approximately one-half had damage or were broken down on non-uniform pallet loads in multiple locations. This non-uniform stowage resulted in a count being impossible and as such the cargo could not be allocated to the respective Bills of Lading until after sorting which was accomplished after January 7th and not completed until January 24th."

Plaintiff filed this action on January 19, 1988.

## DISCUSSION

The shipments evidenced by these bills of lading are covered by the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. App. §§ 1300 *et seq.* COGSA contains a one-year statute of limitations. § 1303(6). The case at bar turns upon this particular provision in § 1303(6):

> "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered: ..."

The parties dispute the meaning for COGSA purposes of the term "delivery." Defendants say that delivery of the cargo took place on or before January 7, 1987, when the cargo had been discharged from the vessel and the consignee given an opportunity to retrieve it. Plaintiff says that delivery did not occur until its representatives had not only an opportunity to retrieve its cargo in the warehouse, but also a reasonable opportunity to sort out the intermingled pallets and bales, and allocate them among the six bills of lading.

■ Preliminarily, I reject plaintiff's contention that the issue is governed by the Harter Act, 46 U.S.C.App. §§ 190–195. Plaintiff says COGSA only partially supersedes the Harter Act, and that the latter statute still applies following discharge from the vessel until proper delivery to the consignee is effected. But I need not consider whether the statutory concepts of "delivery" differ because, as Judge Lasker held in *Lithotip, C.A. v. S.S. Guarico*, 569 F.Supp. 837, 838–39 (S.D.N.Y.1983), a distinction exists between determining when a carrier's responsibility for damage to cargo terminates, and when a consignee's cause of action accrues for purposes of a statute of limitations. The Harter Act may have an office to perform in the first of these considerations, but COGSA governs the second.

Thus the question becomes when "delivery" occurs under COGSA. There is no statutory definition, no legislative history, little case law, and no Supreme Court or Second Circuit authority directly on point. Each of the relatively few cases turns on its own circumstances.

That is illustrated by *Lithotip, supra,* upon which defendants place a not wholly justified reliance. Judge Lasker supplemented his opinion at 592 F.Supp. 1280 (S.D.N.Y.1984). Reading the two decisions

together, it appears that the shipment in suit consisted of "523 large rolls of printing paper" or "newsprint." 592 F.Supp. at 1281. There is no indication that there were multiple bills of lading; on the contrary, the court refers to "the Bill of Lading." 569 F.Supp. at 839. There is no indication that the rolls of printing paper were anything other than uniform in dimension and other physical properties.

In these circumstances, Judge Lasker held the consignee's suit for damage and shortage time-barred where the consignee learned of the cargo's arrival on May 4, 1981; received a port authority permit to retrieve the cargo on May 14; took physical delivery between May 18 and May 25; and sued on May 18, 1982. Judge Lasker concluded that COGSA "delivery" occurred on May 14, 1981, so that the complaint fell outside the one-year limitation period. 592 F.Supp. at 1281.

Citing *American Hoesch, Inc. v. Steam-* C.1970), Judge Lasker said in his first opinion at 569 F.Supp. 839:

"[A] principal distinction between 'discharge' and 'delivery' is that delivery implies an opportunity for the consignee or his agent to observe defects."

Having quoted that language, from his initial opinion in *Lithotip*, Judge Lasker continued in his second opinion at 592 F.Supp. 1281:

"While this passage makes clear that the 'opportunity to retrieve' requirement for accrual of the COGSA statute of limitations is intended to give consignees the chance to make inspections of cargo condition, there is no suggestion, either in the opinion or in any other COGSA case, that the statute does not begin to run until an actual inspection takes place. *See, e.g., National Packaging Corp. v. Nippon Yusen Kaisha,* 354 F.Supp. 986, 987 (N.D.Ca.1972); *American Hoesch, supra,* 316 F.Supp. at 1196. Although circumstances can be envisioned in which a consignee would be entitled to a reasonable amount of time to make a cargo inspection, plaintiff has offered no evidence to support its claim that in this case the statute should not be held to have commenced to run on the day on which plaintiff was given the opportunity to retrieve the cargo.

As revealed in the survey report conducted on June 15, 1981 and attached to the affidavit of plaintiff's counsel, of the 523 rolls of newsprint that were to be delivered by defendant to plaintiff, 62 rolls were short-delivered and 106 were delivered with cuts and gashes. Plaintiff's counsel does not allege that a survey of the cargo's condition could not have been made on May 14 when the cargo was released to Lithotip or that such a survey would have required several days. Indeed, it would seem that comparatively little time would have been required for plaintiff or its agent to complete a survey given that the cargo consisted of large rolls of printing paper."

By way of contrast, the case at bar involves six separate bills of lading; each bill of lading covered a different number of pallets and different numbers of bales; and the bales covered by the bills had different physical properties. Captain Porter says that it was impossible to allocate the bales to the bills of lading when they were first discharged to the warehouse. Given the condition in which the vessel loaded, stowed, and discharged the cargo, that is hardly surprising. Implicit in Porter's affidavit and survey is the statement that the sorting and allocation process could not be completed with the joint survey on January 24, 1987. Defendants do not suggest otherwise; and plaintiff submits a certification of the terminal operator that sorting of the twine required 13 eight-hour working days. Rather, defendants insist that the consignee had a reasonable opportunity of retrieval as of January 7, when "delivery" occurred and the cause of action accrued; they characterize the subsequent sorting as carried out at the consignee's own time and expense, and for its own convenience.

Plaintiff cites two COGSA "delivery" cases: *Nissho Iwai American Corp. v. M/V Ocean Lilly,* 1982 A.M.C. 1301 (S.D. N.Y.1981) (not officially reported); and *Loeb v. The S.S. Washington Mail,* 150 F.Supp. 207 (S.D.N.Y.1956).

In *Nissho Iwai*, District Judge Pierce (as he then was) described the facts as follows:

"This is an action to recover money damages for a shipment of coils of galvanized iron, which allegedly were damaged during shipment from Kimitsu, Japan to Mobile, Alabama, on the defendant ship, the M/V Ocean Lilly. The shipment was sent under four bills of lading (KMMB2, 3, 4, and 5) and was unloaded in Mobile over the nine day period from January 21, 1980 through January 29, 1980. The coils unloaded on January 21 through January 24 were attributed to bills of lading KMMB 2, 3, and 4; the coils unloaded on January 25 were attributed to KMMB 4; and the coils unloaded on January 28 and 29 were attributed to bills of lading KMMB 3, 4, and 5."

1982 A.M.C. at 1301.

Plaintiff filed its complaint on January 28, 1981. The ship owner said the action was time-barred under COGSA. Judge Pierce analyzed the issue at 1303:

"The question as to whether or not all or part of this action was time barred at the time it was filed therefore would appear to turn on whether the coils attributable to each bill of lading were segregated and separately delivered under the bills of lading to which they were specifically referable. If so, each bill of lading should be considered separately and a separate cause of action can be validly based on each. If, on the other hand, all of the coils were identical and were indiscriminately attributed to any one of the four bills of lading during unloading, delivery of the whole lot would constitute one ongoing act which gives rise to only one cause of action."

Because resolution of that issue presented issues of fact which the motion papers did not resolve, Judge Pierce denied defendant's motion to dismiss the complaint.

In *Loeb*, Judge Knox dealt with a shipment of 224 bales of rubber which formed a part of the carrying vessel's general cargo. According to the bill of lading, the bales of rubber were to be carried from Penang to San Francisco. However, owing to dock conditions prevailing at that port, the vessel first proceeded to Los Angeles discharging about one-half of her cargo, and thence to San Diego, where the vessel completed her discharge to the pier on October 8. On October 11 the consignee received 186 bales of its original consignment. The last delivery of the vessel's cargo discharged at San Diego occurred on October 31. The balance of the consignee's 38 bales was never delivered. The consignee filed suit on October 14, 1952. Judge Knox rejected the shipowner's contention that the latest day on which the limitation began to run was October 11, 1951. He stated at 150 F.Supp. 210:

"When libelants received 186 bales of their goods on October 11th, they had a right to believe that the vessel, by its admission in the bill of lading, had taken on board the entire shipment that was made at Penang. See: *American Trading Co., Inc. v. The Harry Culbreath*, 2 Cir., 187 F.2d 310, and *Karabagui v. Shickshinny, D.C.*, 123 F.Supp. 99, 102. There was no reason to think otherwise. Consequently, on receiving a partial delivery of their goods, libelants naturally could, and would, assume that the missing bales had been discharged from the vessel, and that due to the hustle and bustle, and perhaps, confusion, that prevailed upon the pier, had merely been mislaid; and, further, that in the course of handling the mass of some 30,000 bundles of like cargo, the missing bales would be located and delivered."

On the basis of this analysis, the Court concluded that the statute of limitations did not begin prior to October 31, 1951.

Neither case is squarely in point. In *Nissho Iwai*, while Judge Pierce denied the shipowner's time-bar motion, he did so only in order that the underlying facts might be resolved at trial.

In *Loeb* the vessel departed from her contracted-for voyage to a single port, and discharged her cargo (including plaintiff's shipment) at two other ports.

But these cases indicate generally that practical circumstances play a part in determining when "delivery" of cargo occurs. Judge Pierce factored into his equation the

physical characteristics of the coils and the manner of their attribution to the several bills of lading. Judge Knox considered that the consignee could not reasonably establish a short delivery until all the vessel's cargo had been claimed at the second discharge port. Similar considerations informed Judge Lasker's opinions in *Lithotip*.

The parties cite other cases construing "delivery" of ocean cargo: some COGSA cases, others Harter Act cases, others arising from the general maritime law, and one from the regulatory field. Some of the cases have nothing to do with accrual of causes of action for limitation purposes. But I need not extend the discussion further, since "delivery" does not exist in a vacuum, and the circumstances of each case dictate the result. It is at heart a question of common sense.

■ In the case at bar, and viewing the evidence for purposes of this motion only in the light most favorable to plaintiff, I conclude that where an ocean carrier accepts for carriage palletized bales of twine of different markings and physical characteristics, issues separate bills of lading (and hence separate contracts of ocean carriage) which recite and conform to those different markings and physical characteristics, and then in the course of loading, stowage, transportation or discharge of the cargo creates chaos out of order in respect of the six bills of lading issued, the carrier does not make effective "delivery" of the cargo to the consignee under COGSA by simply dumping the mess onto a pier for the consignee to sort out. In these circumstances, effective delivery does not occur until the consignee has had a reasonable time to restore order from chaos, so that the fact of damage or loss under each separate bill of lading, covering items of differing marks and characteristics, may be established, and their amounts quantified.

In short, I find in this case the existence of those circumstances and proof which Judge Lasker foresaw in *Lithotip, supra.*

Defendant's motion to dismiss the complaint as time barred is denied.

## OTHER MOTIONS

The motion papers present two other issues which are essentially non-controversial, and may be dealt with summarily.

Kersten Shipping, Inc. moves to dismiss the complaint as to it because it acted as an agent for a disclosed principal. Plaintiff does not resist that motion. Brief at 12. Accordingly the complaint against Kersten will be dismissed.

Third-party defendant Kim–Sail moves to stay the third-party complaint of Dowa on the ground that the sub-time charter party between Dowa and Kim–Sail contains an arbitration clause requiring arbitration of disputes between those parties. Plaintiff furiously opposes a stay of proceedings pending arbitration, on the ground that the consignee is not bound by the arbitration clause. But I do not understand Kim–Sail to be arguing that the plaintiff is so bound. Its motion, as I understand it, runs only against Dowa; and, as to that party, the breadth of the arbitration clause entitles Kim–Sail to a stay of the third-party complaint pending arbitration. United States Arbitration Act, 9 U.S.C. §§ 1, 3.

## CONCLUSION

For the foregoing reasons, the several motions are adjudicated as follows:

1. Defendants' motion to dismiss the complaint as time-barred is denied.

2. The motion of third-party defendant Kim–Sail, Ltd. to stay the third-party complaint against it pending arbitration is granted.

3. The complaint against defendant Kersten Shipping Agency, Inc. is dismissed with prejudice and without costs.

It is SO ORDERED.