ORIENT ATLANTIC PARCO,
INC., Plaintiff,

v.

MAERSK LINES a/k/a Leda Maersk &
Moller Steamship Company and
Kurz–Allen, Inc., Defendants.

No. 90 Civ. 0563 (GLG).

United States District Court,
S.D. New York.

June 29, 1990.

Frank T. D'Onofrio, Jr., Hartsdale, N.Y. (Frank T. D'Onofrio, Jr., of counsel), for plaintiff.

Freehill, Hogan & Mahar, New York City (Eric E. Lenck, Kevin J. Keelan, of counsel), for defendant Maersk Lines a/k/a Leda Maersk & Moller S.S. Co.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Michael White, of counsel), for defendant Kurz–Allen, Inc.

## OPINION

GOETTEL, District Judge:

The plaintiff, Orient Atlantic Parco, Inc. ("Orient") as consignee, contracted with the defendant Maersk Lines, as shipper, to ship 3600 cartons of frozen mushrooms from Shanghai to Philadelphia. The bill of lading designates that the cargo was to be shipped on a freight collect basis. The shipment arrived in Philadelphia on February 17, 1988. Before the goods arrived, the plaintiff became aware of an error in the freight charges and advised the defendant. The discrepancy was cleared up and the proper freight charges assessed on or about February 29, 1988.

During the time when the freight charges were being settled, demurrage charges were accruing. The defendant tendered the mushrooms and demanded payment for the freight and the demurrage charges. The precise date of tender is unclear. The plaintiff refused to pay the demurrage charges contending that the delay was due to the defendant's error. Because of this dispute, the cargo remained at the discharging terminal and demurrage charges continued to accrue.

On or about July 27, 1988, the plaintiff requested that the mushrooms be moved into a cold storage facility to avoid further demurrage charges and agreed to accept the storage charges as of July 27, 1988.[1] The defendant completed the transfer to the Holt Cold Storage Facility on August 2, 1988, where they apparently remain to date.[2] At some point after discharge of the cargo it came to the plaintiff's attention that the goods had been damaged.[3]

The plaintiff commenced this action in State Supreme Court, Westchester County by a summons and complaint dated September 15, 1989 which was allegedly served on the defendant some time in January 1990. The action asserted a claim against Maersk for breach of contract and sought recovery of freight, demurrage, storage charges and customs duties the plaintiff might be compelled to pay as well as damages and lost profits in connection with the shipment of defective goods.[4] The defendant removed the action to this court and has moved for summary judgment.

---

1. The plaintiff denies that it "requested" that the mushrooms be placed in cold storage and admits only to agreeing to pay the storage charges. A facsimile transmission from the plaintiff to the defendant, however, reads as follows: "Kindly move the four containers into Holt Terminal Cold Storage Facility immediately to avoid further charges for anybody. We agree to accept storage charges in the Holt Terminal Cold Storage Facility as of today, July 27, 1988." Affidavit of Eric E. Lenck, Ex. D.

2. Although the defendant contends that the mushrooms were placed in cold storage on the plaintiff's account, in a letter dated May 23, 1989 to the cold storage company, Maersk stated that "the goods were placed into storage under the condition that the cargo would not be released without Maersk Line approval ..." Affidavit of Phillip D. Greenberg, Ex. K.

3. The plaintiff had contracted for the shipment of mushrooms that had been individually quick-frozen. Two examinations by Joseph Irwin, Inc., conducted at the behest of the defendant, indicated that, upon arrival at the cold storage facility, the mushrooms were block-frozen. The condition of the mushrooms suggested the possibility that at some point during shipment the mushrooms had thawed and re-frozen. This condition gives rise to the plaintiff's claim for damaged cargo.

4. The plaintiff has also sued Kurz–Allen, Inc. for clearing the goods through customs without authorization and despite the ongoing dispute between the plaintiff and Maersk Lines. Kurz–Allen has not moved for summary judgment.

■ The defendant's primary argument is that the plaintiff's action is barred by the statute of limitations. The Carriage of Goods by Sea Act ("COGSA"), which, the parties agree, governs this action, provides that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C.App. § 1303(6) (1982). Thus, the critical question for determination on this motion is when delivery occurred.

The defendant contends that delivery took place, at the latest, on August 2, 1988, when the goods were transferred to the refrigerated warehouse at the plaintiff's request. Indeed, the defendant argues that delivery occurred months before that when the cargo was discharged and the plaintiff was put on notice of its arrival and given an opportunity to inspect the goods and take possession. The plaintiff, on the other hand, contends that the cargo has never been delivered.[5]

There are surprisingly few cases that define "delivery" within the context of COGSA. As stated succinctly by Judge Haight: "There is no statutory definition, no legislative history, little case law, and no Supreme Court or Second Circuit authority directly on point. Each of the relatively few cases turns on its own circumstances." *Atlantic Mutual Ins. Cos. v. M/V "Balsa 38"*, 695 F.Supp. 165, 167 (S.D.N.Y.1988). There appears to be a consensus among the courts, however, that delivery requires something more than mere discharge of the cargo. *See Lithotip, CA v. S.S. Guarico*, 569 F.Supp. 837, 839 (S.D.

N.Y.1983) (citing cases).[6] It is equally apparent that · something less than actual physical delivery is required. *See Lithotip, CA v. S.S. Guarico*, 592 F.Supp. 1280, 1281 (S.D.N.Y.1984). In a decision that was dubbed by the court as "the first time an American court has been called upon to decide what the term [delivery] means as used in COGSA," Judge Wollenberg of the Northern District of California stated that:

Just as "delivery" does not mean actual physical transfer, neither does it mean discharge from the ship, without more. Between these two extremes is a period in which the consignee should receive notice that the goods have been discharged and should have a reasonable opportunity to remove the goods or place them under proper care and custody.

*National Packaging Corp. v. Nippon Yusen Kaisha (N.Y.K Line)*, 354 F.Supp. 986–87 (N.D.Cal.1972). Judge Lasker, in both *Lithotip* decisions, concluded that delivery did not occur until the consignee had an opportunity to inspect the goods. "[A] principle distinction between 'discharge' and 'delivery' is that delivery implies an opportunity for the consignee or his agent to observe defects." *Lithotip I*, 569 F.Supp. at 839. Moreover,

[w]hile this passage makes clear that the "opportunity to retrieve" requirement for accrual of the COGSA statute of limitations is intended to give consignees the chance to make inspections of cargo condition, there is no suggestion ... that the statute does not begin to run until an actual inspection takes place.

*Lithotip II*, 592 F.Supp. at 1281. Similarly, in *Atlantic Mutual Ins. Cos. v. M/V "Balsa 38"*, 695 F.Supp. 165 (S.D.N.Y.1988), the

---

5. The plaintiff's contention that the mushrooms were never delivered raises an initial question of the plaintiff's standing to assert the claims raised in the complaint. To the extent that actual delivery was prevented by the plaintiff's rejection of the tendered goods or the dispute over freight and demurrage, its claims for loss and damage due to defective goods are nonetheless governed by COGSA's one-year statute of limitations. *See infra* note 8 and accompanying text.

6. The *Lithotip* case produced two opinions by Judge Lasker. In the first opinion, Judge Lask-

er denied the defendant's motion for summary judgment on statute of limitations grounds because it was then unknown when the plaintiff received notice of the arrival of the cargo. *Lithotip, CA v. S.S. Guarico*, 569 F.Supp. 837, 840 (S.D.N.Y.1983) (*"Lithotip I"*). When evidence of the plaintiff's knowledge was discovered, the defendant renewed its motion and summary judgment was granted in its favor on the ground that the action was time barred. *Lithotip, CA v. S.S. Guarico*, 592 F.Supp. 1280, 1281 (S.D.N.Y. 1984) (*"Lithotip II"*).

court concluded that "effective delivery does not occur until the consignee has had a reasonable time to restore order from chaos, so that the fact of damage or loss ... may be established, and their amounts quantified." *Id.* at 170. Accordingly, we define delivery for purposes of COGSA's statute of limitations as discharge of the cargo with notice to the consignee and an opportunity for the consignee to inspect the goods for defects.[7]

In this case, it is undisputed that the cargo of mushrooms arrived in Philadelphia on February 17, 1988. It is also clear that the plaintiff received notice of the cargo's arrival a short time afterwards when the defendant made a demand for freight and demurrage charges. In any event, when the mushrooms were placed in cold storage on August 2, 1988, the plaintiff clearly had an opportunity to inspect the cargo for defects. That the plaintiff agreed to accept the storage charges attests to its knowledge of the mushroom's whereabouts as well as its opportunity to inspect. Indeed, annexed to the defendant's reply affidavit is Warehouse Receipt and Invoice, dated August 3, 1988, from the cold storage facility that noted that "MANY [CARTONS] ARE CRUSHED, BULGING AND HAVE SPLIT ENDS CONTENTS ARE BLOCK FROZEN." Reply Affidavit of Massoud Messkoub, Ex. B. The addressee of the invoice is the plaintiff, Orient Atlantic. Thus, the plaintiff may have aquired actual knowledge of potential defects in the cargo sometime in August 1988.

In light of all these factors, we conclude that delivery for the purposes of COGSA's statute of limitations occurred, at the latest, on August 2, 1988.[8] Because this action was not commenced until September 15, 1989, at the earliest,[9] the claims against Maersk Lines for loss or damage are time-barred. Consequently, the counts asserted against Maersk Lines for loss or damage to cargo are dismissed.

The defendant also seeks summary judgment on its counterclaim for freight costs. The plaintiff concedes that freight in the amount of $20,400.00 is due and owing to the defendant. Its only arguments in opposition to the counterclaim are that summary judgment should not be granted because the plaintiff's claims against the defendant for loss and damage are outstanding and because there is a question of fact regarding delivery. Having resolved those questions and dismissed the plaintiff's loss and damage claims, there is no sound reason why the defendant should not be granted summary judgment on its counterclaim for freight in the amount of $20,400.00. There being no just reason for delay, the clerk is directed to enter judgment for the defendant Maersk Lines a/k/a Leda Maersk & Moller Steamship Company against the plaintiff pursuant to Rule 54(b) in the amount of $20,400.00.

It is important to note at this juncture that we do not resolve the parties' dispute about demurrage and storage charges. The plaintiff's complaint contains a claim for demurrage and cold storage charges against the defendant and the defendant asserts a similar claim by counterclaim. Although we have dismissed the plaintiff's loss and damage claims, its claims for demurrage, customs duties and cold storage charges stand. Similarly, while we grant the defendant summary judgment on its

---

7. Cases from other courts have reached the same conclusion. *See, e.g., American Hoesch, Inc. v. Steamship Aubade,* 316 F.Supp. 1193, 1196 (D.S.C.1970); *Bottom Line Imports v. Korea Shipping Corp.,* 181 N.J.Super. 172, 436 A.2d 978, 981 (1981).

8. To the extent that the plaintiff persists in its argument that the mushrooms were never delivered, a claim for loss or damage the one-year statute of limitations would nonetheless begin to run on "the date when the goods should have been delivered." 46 U.S.C. § 1303(6) (1982). The goods should have been delivered upon arrival in Philadelphia in early February 1988. Consequently, even on a "no delivery" theory, the plaintiff's claims for loss and damage would be time-barred.

9. The plaintiff's complaint in the Supreme Court, Westchester County is dated September 15, 1989. The defendant contends that service was not made on the defendant until January 11, 1990. The defendant further contends that service was improper. Having dismissed the plaintiff's complaint on statute of limitations grounds, we need not address this claim.

claim for freight, we do not rule on its claim for demurrage.

■ Finally, the defendant moves to strike the plaintiff's jury demand. The plaintiff's remaining claims against the defendant are for demurrage, storage charges and customs duties. Claims within the admiralty or maritime jurisdiction of the federal courts do not give rise to a right to a trial by jury. Fed.R.Civ.P. 38(e). Demurrage claims clearly fall within the court's admiralty jurisdiction. *See Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity, Ltd.,* 689 F.Supp. 1340, 1356 (S.D.N.Y.1988); G. Gilmore & C. Black, *The Law of Admiralty* 22 (2d ed. 1975). Consequently, the plaintiff's demurrage claim does not create a right to a trial by jury. Fed.R.Civ.P. 38(e).

■ The plaintiff's claim for cold storage charges, however, is another matter. On-land storage, occurring either before loading or after discharge is within the court's admiralty jurisdiction when "the element of storage is merely incident to a maritime contract." *Moore–McCormack Lines v. International Terminal Operating Co.,* 619 F.Supp. 1406, 1409 (S.D.N.Y.1985). When the storage contract is separate from the shipment of goods by sea, however, it is not a maritime contract and is outside of federal admiralty jurisdiction. *See Roco Carriers, Ltd. v. M/V Nurnberg Express,* 899 F.2d 1292, 1295 (2d Cir.1990); *Colgate Palmolive Co. v. S/S Dart Canada,* 724 F.2d 313, 315 (2d Cir.1983), *cert. denied,* 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984). While defining a maritime contract is a difficult matter,

> [i]f the subject matter of the contract "relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment" it is fairly said to constitute a maritime contract.

*Ingersoll Milling Machine Co. v. M/V Bodena,* 829 F.2d 293, 302 (2d Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988) (quoting *CTI–Container Leasing Corp. v. Oceanic Operations Corp.,* 682 F.2d 377, 379 (2d Cir.1982) (quoting 1 *Benedict on Admiralty* § 183, at 11–6 (7th ed. 1981))).

■ It appears to us that the decision to place the mushrooms in cold storage while the parties attempted to resolve their dispute over freight and demurrage was not a maritime matter. The maritime aspect of the parties' relations had drawn to a close. The ship had arrived in port and discharged its cargo. While short-term storage between discharge and delivery may be sufficiently related to maritime services to fall within the court's admiralty jurisdiction, *see Moore–McCormack Lines v. International Terminal Operating Co.,* 619 F.Supp. 1406, 1409 (S.D.N.Y.1985), storage for an indefinite period of time while the parties resolve various contract disputes is not sufficiently related to maritime activity to invoke federal admiralty jurisdiction. Consequently, we conclude that the plaintiff's claim for cold storage charges is, in essence, a state law contract claim outside the ambit of federal admiralty jurisdiction.[10] Thus, the plaintiff is entitled to a jury trial on this claim.

■ Finally, we consider whether the plaintiff is entitled to a jury trial on its claim for customs duties. Our research efforts have revealed no cases that touch upon this question. Under the standards enunciated above, however, it would appear that the payment of customs duties on the importation of foreign goods brought into the country by overseas transport is a matter incident to maritime transactions. Consequently, determination of issues arising from the payment of customs duties would be within this court's admiralty jurisdiction. Thus, this claim, like the plaintiff's demurrage claim, will not be tried to a jury.

In conclusion, the defendant's motion to dismiss the plaintiff's claims for cargo damage and consequential damages is granted. The defendant's motion for summary judgment on its counterclaim for

---

**10.** Ordinarily, this conclusion would oust the court of jurisdiction over this claim. The claim is, however, supported by diversity jurisdiction, as the plaintiff is a citizen of New York and the defendant is a citizen of Denmark. 28 U.S.C. § 1332(a)(2) (1988).

freight charges in the amount of $20,400.00 is granted but is denied in all other respects. The defendant's motion to strike the plaintiff's jury demand is granted as to the plaintiff's demurrage and customs duties claims but is denied with respect to its storage charges claim. Execution of judgment on the defendant's counterclaim is stayed pending resolution of the parties' remaining claims. Fed.R.Civ.P. 62(h).

SO ORDERED.