**A.S.T., U.S.A., INC., Plaintiff,**

v.

**M/V FRANKA, Her Engines,
et al., Defendants.**

**Civil No. AMD97–69.**

United States District Court,
D. Maryland.

Oct. 24, 1997.

John H. West, III, Baltimore, MD, for Plaintiff.

Robert P. O'Brien, Niles, Barton & Wilmer, Baltimore, MD, for Defendant.

## MEMORANDUM

DAVIS, District Judge.

This case arises within the court's admiralty jurisdiction. Plaintiff A.S.T., U.S.A., Inc., was the consignee of a shipment of steel coils. The coils had been damaged by the time of their delivery in Baltimore. Consequently, AST seeks damages from the shipowner and the manager of the vessel.

Pending before the Court is the defendants' motion for summary judgment on the ground of limitations. The parties' memoranda and exhibits have been carefully considered, and no oral argument is necessary. Local Rule 105.6 (D.Md.1997). For the reasons set forth below, I shall grant the motion for summary judgment.

## I. FACTS

The parties agree that there is no dispute of material fact, and the issues presented are issues of law.

The M/V FRANKA is an ocean–going vessel registered in Kingstown, St. Vincent & the Grenadines The FRANKA is owned by defendant Renzlor Securities Corporation ("Renzlor"). Defendant Ferrenka Handelgesellschaf M.B.H. was the manager of the vessel. AST's representatives loaded a shipment of steel coils onto the FRANKA in Civitavecchia, Italy, concluding on December 9, 1995. The FRANKA arrived in Baltimore on December 30, 1995. Discharge of the cargo occurred from December 31, 1995 to January 4, 1996. Mario Dialinos of Allcargo Surveyors, representing the ship owner and ship owner's insurer, and David B. Wells ("Wells") of Luard & Co., which had been retained to represent AST, were present during the discharge and observed and discussed between themselves damage to the cargo. Wells faxed a preliminary report to AST on January 2, 1996, in which he estimated that the damage amounted to $66,000.

Wells faxed a second preliminary report to AST on January 5, 1996. The report noted that the FRANKA concluded discharge on January 4, 1996, and stated that "[h]eavy condensation was found in all compartments.... Rusted bands/covers were noted on many coils." This report estimated the damage to the cargo at $85,000. The nature and amount of damages estimated in the second preliminary report were the same as the estimate in the final report, issued on January 30, 1996.

The coils were discharged from the vessel to the custody of the carrier's terminal, Locust Point Terminal, where they were stored prior to being retrieved by AST's trucker. Authorities at the Locust Point Terminal

would not allow the cargo to be retrieved until, *inter alia,* U.S. Customs authorized release of the cargo. The Customs Service did not release the cargo until January 11, 1996. AST's trucker did not commence retrieving the cargo until January 17, 1996.

Subsequently, on January 23, 1996, acting through counsel, defendants' liability insurer executed a letter agreement which, *inter alia,* guaranteed payment of any judgment in favor of plaintiff, in consideration for plaintiff's forbearance in seeking the arrest of the FRANKA. The letter provided as follows in pertinent part:

> This letter of undertaking is not to be construed as an admission of liability or an acknowledgment of damages on the part of the M/V FRANKA and/or her owners/charterers and *the giving of this letter of undertaking is entirely without prejudice to any rights or defenses which the said M/V FRANKA and/or her owners/charterers may have,* including, but not limited to, the right of limitation of liability, *none of which is to be regarded as waived.* (Emphases added).

Plaintiff filed suit on January 9, 1997.

## II. SUMMARY JUDGMENT STANDARDS

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538(1986). A party moving for summary judgment is entitled to a grant of summary judgment only if no issues of material fact remain for the trier of fact to determine at trial. *Id.* at 587, 106 S.Ct. at 1356. A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation.

*Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). *See O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Shealy,* 929 F.2d at 1012.

## III. ANALYSIS

Because the goods involved in this case originated in Italy, pursuant to the bill of lading issued in connection with their transport, the law applicable in this case is found in the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, Aug. 25, 1924, 51 Stat. 233, T.S. No. 931, 120 U.N.T.S. 155, as amended by the Protocol to Amend the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, signed at Brussels, February 23, 1968 ("Hague–Visby Rules"). The United States enacted its version of the Hague–Visby Rules pursuant to the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.*

The Hague–Visby Rules and COGSA provide the same one year statute of limitations. The Hague Rules provide:

[T]he carrier and the ship shall in any event be discharged from all liability whatsoever in respect of the goods, unless suit is brought within one year of their delivery or of the date when they should have been delivered....

Hague–Visby Amendments, art. I § 2, Brussels, February 23, 1968. COGSA provides in pertinent part:

In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods, or the date when the goods should have been delivered.

46 U.S.C.App. § 1303(6). The dispute in this case is over the meaning of the term "delivery." The parties agree that decisions rendered by federal courts analyzing the general maritime law as it applies to the COGSA limitation period are applicable to the instant action. I shall briefly review some of the extant case law, and explain why in this case the conclusion is inescapable that this action is time–barred.

In *Orient Atlantic Parco, Inc. v. Maersk Lines,* 740 F.Supp. 1002 (S.D.N.Y.1990), a consignee of a cargo of frozen mushrooms sought to recover from the shipper damages and lost profits resulting from damaged cargo. As a result of a dispute as to payment of freight and later, demurrage, the cargo remained at the discharging terminal for about five months after discharge. On August 2, 1988, to avoid further demurrage, the plaintiff suggested that the goods be moved into a cold storage facility. At some point after discharge, although it is not clear exactly when, the plaintiff realized the cargo had been damaged. The defendants sought summary judgment as to the cargo damage on limitations grounds under COGSA. It was undisputed that the cargo arrived on February 17, 1988, and that plaintiff received notice of the cargo's arrival a short time afterwards.

The dispositive question was when "delivery" occurred. The court noted:

There are surprisingly few cases construing the term "delivery" within the context of COGSA.... "There is no statutory definition, no legislative history, little case law, and no Supreme Court or Second Circuit authority directly on point. Each of the relatively few cases turns on its own circumstances."

*Id.* at 1004 (quoting *Atlantic Mut. Ins. Companies v. M/V Balsa 38,* 695 F.Supp. 165, 167 (S.D.N.Y.1988)). The court surveyed the authorities and reasoned:

There appears to be a consensus among the courts, however, that delivery requires something more than mere discharge of the cargo. It is equally apparent that something less than actual physical delivery is required.

\*  \*  \*  \*  \*  \*

"Just as 'delivery' does not mean actual physical transfer, neither does it mean discharge from the ship, without more. Between these two extremes is a period in which the consignee should receive notice that the goods have been discharged and should have a reasonable opportunity to remove the goods or place them under proper care and custody."

*Id.* at 1004 (quoting *National Packaging Corp. v. Nippon Yusen Kaisha (N.Y.K Line),* 354 F.Supp. 986–87 (N.D.Cal.1972)) (citation omitted). The court ultimately concluded as follows:

Accordingly, we define delivery for purposes of COGSA's statute of limitations as discharge of the cargo with notice to the consignee and an opportunity for the consignee to inspect the goods for defects.

*Id.* at 1005.

Applying its formulation to the facts presented, the court held that at the latest, delivery occurred on August 2, 1988:

In any event, when the mushrooms were placed in cold storage on August 2, 1988, the plaintiffs clearly had an opportunity to inspect the cargo for defects.

*Id.* Because the action was not commenced until September 15, 1989, the claims asserted against the defendant were dismissed.

In *Lithotip v. S.S. Guarico,* 569 F.Supp. 837, 840 (S.D.N.Y.1983), the court stated that "the COGSA statute of limitations began to

run on the date on which [plaintiff] was notified of the arrival of the cargo and given an opportunity to retrieve it." However, the court held that the record did not indicate the date on which Lithotip was given notice. Therefore, the defendant's motion for summary judgment on limitations grounds was denied. Upon reconsideration after the summary judgment record was supplemented, the court granted the motion. *Lithotip v. S.S. Guarico,* 592 F.Supp. 1280 (S.D.N.Y. 1984).

The cargo had arrived at its destination in Venezuela on April 30, 1981, and was discharged to the Instituto Nacional de Puertos ("INP"), the government agency responsible for port operations and cargo handling. Plaintiff learned of the cargo's arrival on May 4, 1981. The INP authorized plaintiff to take possession of the cargo on May 14, 1981. Lithotip took actual possession of the cargo between May 18, and May 25, 1981. The complaint was filed on May 18, 1982.

The court observed that " 'delivery' implies an opportunity for the consignee or his agent to observe defects." *Id.* at 1281 (quoting *American Hoesch, Inc. v. S.S. Aubade,* 316 F.Supp. 1193, 1196 (D.S.C.1970)). Furthermore, the court stated:

> While ... the "opportunity to retrieve" requirement for accrual of the COGSA statute of limitations is intended to give consignees the chance to make inspections of cargo condition, there is no suggestion ... that the statute does not begin to run until an actual inspection takes place.... Although circumstances can be envisioned in which a consignee would be entitled to a reasonable amount of time to make a cargo inspection, plaintiff has offered no evidence to support its claim that in this case the statute should not be held to have commenced to run on the date on which plaintiff was given the opportunity to retrieve the cargo.

*Id.* at 1281 (citations omitted). The court held that since the statute of limitations began to run on May 14, 1981, when the plaintiff was first entitled to retrieve the cargo, the complaint filed on May 18, 1992 was time-barred. *And see Atlantic Mut. Ins. Companies v. M/V Balsa 38,* 695 F.Supp. 165, 170 (S.D.N.Y.1988)("effective delivery does not occur until the consignee has had a reasonable time to restore order from chaos, so that the fact of damage or loss [to distinct cargo packages] under each [of six] separate bill[s] of lading, covering items of differing marks and characteristics, may be established, and their amounts quantified").

In *Cargill Ferrous Intern., a Div. of Cargill, Inc. v. M/V Elikon,* 857 F.Supp. 45 (N.D.Ill.1994), the court construed the term "delivery" more narrowly. There, the consignee sued under COGSA for damage sustained by steel coils during shipment. The ship arrived in Chicago on the morning of November 29, 1991. Cargill and its agent learned of the arrival and dispatched a marine surveyor to inspect the goods as they were being unloaded from the vessel. At 11:30 p.m. on December 2, the cargo was completely unloaded. Cargill's surveyor inspected the cargo as it was being unloaded, and this inspection continued into December 3. During this time, the surveyor viewed only about twenty–five percent of the cargo. He did not unpack the containers, stating that the coils themselves could not be inspected until they could be unpacked. Cargill did not file suit until December 3, 1992, one year and one day after the cargo was completely unloaded from the ship.

The court found that delivery occurred at 11:30 p.m. on December 2, when the cargo was completely unloaded from the ship and placed in the custody of Cargill's agent. The court explained:

> At that time, Cargill was aware the shipment had arrived, and a Cargill agent was present to accept the shipment. The court declines to follow the cases holding that "delivery" under COGSA includes a reasonable time to inspect. These cases require a determination of what time period would be reasonable in a wide variety of circumstances. Under such an interpretation of "delivery," courts must make an *ex post* determination of reasonableness—and of when the statute began to run—long after the time of the cargo's damage or loss. Defendants would have no idea of how long they might be subject to suit under COGSA, and the legislative purpose and intent of § 1303(6) would be defeated.

*Id.* at 48. The court relied on the fact that under an interpretation different than the one it adopts shippers would never have any certainty about when it could no longer be sued:

> Had the legislature, in enacting the statute of limitations in § 1303(6), wished the statute to accrue with the discovery of the harm or after a reasonable time to inspect, it could have said so. It did not. Instead, the legislature used the word "delivery," and the court will interpret that word in a manner consistent with the notion that statutes of limitation are intended to give defendants notice of when claims against them will become stale.

*Id.* The court asserted that the question of whether the concept of delivery under COG-SA should be broadened (by importing a "reasonable time to inspect" element) to accommodate Cargill in this case, or similarly situated parties in other cases, is best addressed by the legislature. The court also emphasized the distinction between its case and *Atlantic Mutual.* There was nothing in *Cargill* to show that there was any reason to give plaintiff additional time to inspect.

Application of the above principles persuades me that the defendants' motion for summary judgment should be granted. It is clear that under either the more lenient standard applied by the courts in the Southern District of New York, which hold that a reasonable opportunity for inspection of cargo is a condition of an effective delivery, or the more restrictive approach of *Cargill,* the claim asserted here is time-barred.

Citing the "opportunity to retrieve" language from *Lithotip* out of context, AST argues that "delivery" occurred here only when the United States Customs Service authorized the release of the goods, because it was only then, on January 11, 1996, at the earliest, that it could have taken possession or exercised control over the goods. This contention is inapposite. AST clearly had notice of the discharge of the goods, and it had a reasonable period of time (four days) prior to January 9, 1996, to inspect the goods. Indeed, well beyond a mere *opportunity* to inspect, AST *actually inspected* the goods (through its agent, Wells). Thus, AST's argument that customs officials did not permit AST to take possession and con-

trol of the cargo until January 11, 1996, is immaterial in light of the undisputed evidence showing that AST's agent had inspected and found damage to the shipment as early as December 31, 1995, and that AST's agent had submitted two reports detailing the damage to the cargo no later than January 5, 1996.

AST contends, in the alternative, that even if the Court determines that the steel coils were delivered prior to January 9, 1996, defendants are estopped from asserting a limitations defense because they waived it in the letter agreement. On its face, however, the letter agreement shows that this contention is unavailing. The letter agreement provided as follows:

> This letter of undertaking is not to be construed as an admission of liability or an acknowledgment of damages on the part of the M/V FRANKA and/or her owners/charterers and the giving of this letter of undertaking is entirely without prejudice to any rights or defenses which the said M/V FRANKA and/or her owners/charterers may have ... none of which is to be regarded as waived.

AST concedes that the purpose of the letter agreement was merely to avoid the arrest of the FRANKA, and it was not intended to resolve any aspect of the dispute between the parties. The letter agreement could not be more clear as a reservation of all defenses, including a limitations defense, and AST's disingenuous contention that it believed that it was effectively an agreement that the one year limitation period would not be enforced is specious.

## IV. CONCLUSION

For the reasons set forth above, the facts in the record establish as a matter of law that the goods involved here were "delivered" to AST no later than January 5, 1996, when AST's marine surveyor faxed its second preliminary report showing that substantial damage had been incurred to AST's goods. Thus, the commencement of this suit on January 9, 1997, was outside the relevant one year period of limitations. Furthermore, defendants did not waive, and they are not estopped from asserting, their limitations defense. Accordingly, judgment will be en-

tered in favor of defendants. An order follows.

ORDER

In accordance with the foregoing Memorandum, it is this 24th day of October, 1997, by the United States District Court for the District of Maryland, ORDERED

(1) That the motion of defendants for summary judgment is GRANTED; and it is further ORDERED

(2) That JUDGMENT IS ENTERED IN FAVOR OF DEFENDANTS; and it is further ORDERED

(3) That the Clerk shall CLOSE THIS CASE and MAIL copies of this Order and the foregoing Memorandum to the attorneys of record.