**J. KINDERMAN & SONS**

v.

**NIPPON YUSEN KAISHA LINES.**

No. 227 of 1966.

United States District Court, E. D. Pennsylvania.

Jan. 27, 1971.

Harry P. Begier, Jr., Orlofsky & Cozen, Philadelphia, Pa., for plaintiff.

John T. Biezup, Rawle & Henderson, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

WOOD, District Judge.

This is an action in admiralty in which J. Kinderman & Sons as owner of a shipment of toys and novelties seeks to recover the value of the shipment which was destroyed by fire after its discharge onto Pier 53 in Philadelphia. We enter the following findings of fact:

## FINDINGS OF FACT

1. Plaintiff, J. Kinderman & Sons (Kinderman), is a Pennsylvania corporation engaged in the business of importing and selling toys and novelties.

2. Defendant, Nippon Yusen Kaisha Lines, is a Japanese corporation engaged in the business of owning and operating a number of vessels, including the S. S. SETA MARU, for the purpose of carrying cargo for hire as a common carrier on the high seas.

3. On April 30, 1965, defendant issued and delivered six bills of lading covering the shipment of 962 cartons of toys and novelties on board the S. S. SETA MARU from the port of Yokohama, Japan to the port of Philadelphia, Pennsylvania.

4. The S. S. SETA MARU, having on board said 962 cartons of toys and novelties docked in Philadelphia at Pier 53 on Monday, June 7, 1965, at 11:10 P. M.

5. Prior to June 7, 1965, Kinderman became, for value, the owner of said 962 cartons of toys and novelties and holder of the aforesaid bills of lading.

6. The unloading of the S. S. SETA MARU commenced at 8:00 A.M. on Tuesday, June 8, 1965, and finished at 5:40 P.M. on the same day.

7. On June 8, 1965, Kinderman received notice of the arrival of its shipment and also received delivery orders to be tendered to Lavino Shipping Company for the cargo.

8. On June 9, 10 and 11, 1965, Kinderman sent its truck driver to Pier 53 at 8:00 A.M. to receive the cargo. On each occasion the driver called his superior at 10:00 A.M. and informed him that there was a long waiting line and that he did not think that he would be able to receive the cargo. On each occasion he was then ordered to return to Kinderman's place of business.

9. Pier 53 was not open for delivery on Saturday, June 12, 1965, or Sunday, June 13, 1965.

10. On June 14, 1965, Kinderman again sent its truck driver to Pier 53 at

8:00 A.M. He waited there until 4:00 P.M. and then returned to Kinderman's place of business without having received the cargo.

11. A fire broke out on Pier 53 at approximately 1:05 P.M. on June 15, 1965. The fire damaged goods belonging to Kinderman having a fair and reasonable value of $22,231.06.

12. On June 15, 1965, Kinderman's truck driver arrived at Pier 53 shortly after 1:00 P.M. At this time the pier was already on fire, so he made no attempt to receive the cargo.

13. The bill of lading issued by defendant contained the following provision: "The Company shall not be responsible for any consequences arising or resulting from * * * explosion, heat or fire."

14. Pier 53 was a fit and customary wharf.

## DISCUSSION

The determinative issue in this case is whether by the time of the fire defendant had made a proper delivery of the cargo so as to pass the risk of loss to Kinderman for any damage not occasioned by defendant's negligence.

Kinderman contends that under the provisions of the Harter Act, 46 U.S.C. § 190 *et seq.*, defendant had an absolute duty to properly deliver the cargo; that this duty was breached as Kinderman was not afforded a reasonable opportunity to take possession of the goods; and that a prima facie case against defendant was made out by showing delivery of the cargo to the carrier in good condition and subsequent non-delivery to Kinderman, thereby placing the burden on defendant to show that it was not negligent with respect to the loss and that the cause of the loss was validly excepted to in the bills of lading. Defendant contends that proper delivery of the cargo was made, thereby relieving the carrier of its insurer's liability and making it liable only for negligence. Alternatively, if proper delivery was not made, defendant argues that it can still prevail by showing that the cause of the loss was validly excepted to in the bills of lading, thereby shifting the burden to Kinderman to prove that defendant was negligent with respect to the loss. We do not consider this alternative contention, as, for reasons hereinafter stated, we conclude that proper delivery was made and that judgment should be entered for defendant.

In a contract to carry goods by water from port to port, an actual delivery into the possession of the owner or consignee of the goods is not required. The carrier may discharge the goods onto a fit and customary wharf provided due and reasonable notice is given to the consignee and he is given a fair opportunity to remove the goods or place them under proper care and custody. The Eddy, 72 U.S. 481, 18 L.Ed. 486 (1866); North American Smelting Co. v. Moller S. S. Co., 204 F.2d 384 (3rd Cir. 1953); Calcot, Ltd. v. Isbrandtsen Company, 318 F.2d 669 (1st Cir. 1963).

The first element of a proper delivery, delivery at a fit and customary wharf is clearly present. During the year prior to the date of the fire, 231 ships called at Pier 53. These ships represented 20 different companies. (N.T. 120) The same is true of the second element, reasonable notice to the consignee. The record shows that Kinderman received delivery orders for the cargo on June 8, 1965, the same day that it was discharged from the ship. (N.T. 27)

We further conclude that Kinderman was given a fair opportunity to remove the goods from the pier. The contention that such an opportunity was not provided because there is no evidence that the Kinderman cargo was separated from other cargo on the pier is without merit. Sorting sheets introduced into evidence by defendant (Ex. D–1) show that the Kinderman cargo was designated for a specified location on the pier. In addition Mr. Donnelly, Vice-President of Lavino Shipping Company which discharged the goods onto the pier testified that it was the company's custom when discharging cargo from ships to separate it on the pier by bills of lading and lots. (N.T.

123, 124) Therefore we find that the cargo was separated from other cargo on the pier and was accessible to Kinderman.

We are also unimpressed with plaintiff's argument that a reasonable time to take delivery was not afforded because the period of "free time" had not expired. "Free time" is merely the period of time during which a consignee can allow his goods to remain on a pier before it must start paying additional charges. It has nothing to do with whether a carrier has exercised reasonable care in discharging goods from his ship, North American Smelting Co., *supra*, 204 F.2d at p. 386 and has no relevance to the question of what constitutes a proper delivery of the cargo. *Calcot, supra*, 318 F.2d at p. 673.

Finally, we reject plaintiff's contention that a reasonable opportunity to remove the goods was not provided because long waiting lines and crowded conditions at the pier prevented the removal of the cargo. Plaintiff could have removed its cargo on June 9, 10, 11, 14 or morning of the 15th, the day of the fire. On June 9, 10, and 11 plaintiff sent its truck driver to Pier 53 at 8:00 A.M. However, on each occasion the driver waited only until 10:00 A.M., and then called plaintiff's shipper and receiver and advised him that there was a long waiting line at the pier. He then returned to Kinderman's place of business. On June 14 the driver again went to Pier 53 at 8:00 A.M. and remained there until 4:00 P.M. He testified that he was told at that time that it was too late for him to remove the goods but that if he would return the next day at 8:00 A.M., he would be processed first. Even if this statement is true, the fact is that the driver did not return at 8:00 A.M. the next morning, but rather at 1:00 P.M., after the fire on Pier 53 had already started. Moreover the statement is rebutted by the testimony of Lavino Shipping Company's dock boss and delivery clerk, the only two persons who would have been in the position to make the alleged statement. They both testified that they did not tell the driver that it was too late to remove the goods and that the company's policy was that anyone in line by 4:00 P.M. would be serviced. We therefore find that Kinderman could have removed its cargo between the time that it was discharged and the time of the fire.

We are also impressed by the fact that most of the other cargo which had been discharged from the S. S. SETA MARU was removed from the pier prior to the time of the fire. Defendant introduced into evidence 47 delivery receipts which were the delivery receipts for all of the bills of lading from the S. S. SETA MARU. (Ex. D–4) Six of the delivery receipts represent the Kinderman cargo and it is noted on them that the cargo was destroyed by fire or that it was received by Kinderman after the fire in damaged condition. Of the 41 delivery receipts representing the remaining cargo discharged from the S. S. SETA MARU, 24 show complete delivery to the consignee by the time of the fire, 10 show that the consignee removed at least a substantial portion of the cargo from the pier, and only 7 receipts show a complete or practically complete loss. Under the circumstances, we believe defendant afforded all consignees a reasonable opportunity to remove their cargo.

As defendant made a proper delivery of the cargo to plaintiff, the risk of loss passed to plaintiff for any loss not occasioned by negligence on the part of the defendant. The burden of proof of such negligence is on plaintiff, as once there has been a proper delivery of cargo, the Harter Act no longer applies to the relationship of the parties. *Calcot, supra*. As plaintiff has not shown any negligence on the part of defendant, defendant is entitled to judgment.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and of the subject matter.

2. Defendant properly delivered the cargo to plaintiff, thereby passing the risk of loss to plaintiff.

3. Defendant was not negligent with respect to the loss.

4. Judgment is entered for defendant Nippon Yüsen Kaisha Lines.