CROWLEY AMERICAN TRANSPORT, INC., Plaintiff-Appellee,

v.

RICHARD SEWING MACHINE CO., Defendant-Appellant.

Nos. 97-4011, 97-5390.

United States Court of Appeals,

Eleventh Circuit.

April 14, 1999.

Appeals from the United States District Court for the Southern District of Florida. (No. 95-2343-CIV-UNGARO-BENAGES), Ursula Ungaro-Benages, Judge.

Before TJOFLAT and DUBINA, Circuit Judges, and SMITH[*], Senior Circuit Judge.

TJOFLAT, Circuit Judge:

The appellant, Richard Sewing Machine Co., entered into a contract with the appellee, Crowley American Transport, Inc., to transport certain cargo[1] from Miami, Florida, to the "Free Trade Zone" in Managua, Nicaragua. Once there, the contract provided that Crowley would notify both Industrias Sama & Cia, Ltda. ("Sama"), and a Nicaraguan bank regarding the cargo's arrival.

Crowley delivered the cargo to the Free Trade Zone as promised, and notified Sama—but not the bank—of its arrival. The cargo was then entrusted to the Nicaraguan customs authorities, who were expected to release the cargo upon presentation of the original bills of lading.[2] Richard had given the original bills of lading to the Nicaraguan bank, with instructions to tender them to Sama at such time as Sama executed time drafts in Richard's favor totaling $473,704. Sama went to the bank after the cargo arrived, but refused to

[*]Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

[1]The cargo consisted of two forty-foot containers containing sewing machines and textiles.

[2]A "bill of lading" is the contractual agreement between a shipper and a carrier; it also serves as a negotiable document of title. *See Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d 90, 92 n. 1 (1st Cir.1993). Thus, the "bill of lading" and the "contract" are the same document; for purposes of clarity, however, we refer to the document as the "bill of lading" in its title capacity and as the "contract" in its contractual capacity. There were two bills of lading in this case (one for each container of cargo); each bill of lading had the same contractual terms.

execute the required time drafts. Consequently, the bank refused to release the bills of lading, and ultimately returned them to Richard.

Richard, upon learning that the cargo remained unclaimed, contracted with Crowley for the return of the cargo from Nicaragua. Crowley, however, learned that Sama had obtained the cargo from the Nicaraguan customs authorities despite failing to present the original bills of lading.[3] Crowley obtained a Nicaraguan court order demanding return of the cargo; Sama then gave the cargo to Crowley, who shipped it back to Miami. According to Richard, the cargo sustained substantial damage while in Sama's possession.

Richard refused to pay for the transportation to and from Nicaragua, and Crowley brought suit for breach of contract in the United States District Court for the Southern District of Florida to collect the amounts due.[4] Richard defended on the ground that Crowley had failed to perform its obligations under the initial contract by (1) failing to notify the bank when the cargo arrived in Nicaragua, and (2) failing to protect the cargo from misappropriation. Richard also counterclaimed for the damage to the cargo on breach of contract and negligence theories.

Both parties moved for summary judgment on all claims. The district court granted Crowley's motion in full, granting summary judgment for Crowley on its breach of contract claims and on Richard's counterclaims. Crowley then filed a motion for summary judgment on the issue of damages, including a request for attorneys' fees; the district court granted the motion. Richard now appeals, on the same grounds (failure to notify the bank and failure to protect the cargo from misappropriation) upon which it relied in the district court.

I.

---

[3]The means by which Sama obtained the cargo are unknown.

[4]The district court had jurisdiction pursuant to its maritime jurisdiction. *See* 28 U.S.C. § 1333(1) (1994); *Richard Bertram & Co. v. Yacht, Wanda,* 447 F.2d 966, 967 (5th Cir.1971) ("A maritime contract is one which concerns transportation by sea, relates to navigable waters and concerns maritime employment.").

We begin by addressing the notification issue. It is clear that Crowley had a contractual duty to notify the bank upon arrival in Nicaragua: The contract has a section in which the shipper designates parties to be notified upon arrival of the cargo; Richard designated the bank and Sama. Furthermore, it is undisputed that Crowley did not notify the bank upon the cargo's arrival. Consequently, there can be no dispute that Crowley breached the contract.

Establishing that Crowley breached the contract, however, is not sufficient to excuse nonperformance by Richard; Richard must also establish that the breach was material. *See* 17A Am.Jur.2d *Contracts* § 701 (1991) ("[W]here the nonperformance of one party to a contract is innocent, does not thwart the purpose of the bargain, and is wholly dwarfed by that party's performance, the breaching party has substantially performed its obligations and the non-breaching party is not excused from its responsibility under the contract."). In this case, Crowley performed its obligation of delivering the cargo to the Free Trade Zone. The only apparent purpose of the notification provision was to let the bank and Sama know that it was time to commence the exchange of the bills of lading for the bank drafts. This goal was accomplished by providing notification to Sama, which then went to the bank to discuss the documentary transaction.[5] There is no evidence to indicate that, had Crowley given the bank immediate notification of the cargo's arrival, the bank would have prevented Sama's misappropriation of the cargo. Therefore, the breach alleged by Richard was immaterial, and did not excuse Richard's nonperformance.

For this same reason, Richard's counterclaim of breach of contract fails. A party cannot recover damages for breach of contract unless it can prove that the damages were proximately caused by the breach. *See* 5 Arthur Linton Corbin, *Corbin on Contracts* § 997 (1964). Because there is no evidence that the bank would have prevented the misappropriation (and the consequent damage to the cargo) had Crowley notified it of the cargo's arrival, Richard has shown no damages that were proximately caused by Crowley's breach.

---

[5]It is clear from the record that the bank was in fact notified of the cargo's arrival; the alleged breach is based only on the ground that the bank was not notified by Crowley.

Consequently, whatever damages Richard may have suffered from Sama's treatment of the cargo, Richard cannot recover those damages from Crowley solely on the basis of Crowley's failure to notify the bank.

Next, we address the question whether Crowley had a contractual duty to prevent Sama's misappropriation of the cargo. Richard alleges that Crowley was responsible for delivering the cargo to Sama upon Sama's presentation of the original bills of lading; because Crowley relinquished possession of the cargo without receiving the original bills of lading, it failed to comply with its contractual duty of delivery. The contract, however, stated only that Crowley was to deliver the cargo to the Free Trade Zone and to notify Sama of its arrival. It established no duty on Crowley's part for continued oversight of the cargo until such time as Sama presented the original bills of lading. Richard has presented no evidence of a separate agreement for delivery directly to Sama, nor has it presented parol evidence regarding an ambiguity in the contract that would suggest that the contract required delivery directly to Sama. Thus, the misappropriation of the cargo by Sama after delivery to the Free Trade Zone cannot be considered a breach of the contract and does not excuse Richard's nonperformance. For the same reason, Richard's counterclaim for breach of contract on this ground also fails.

Finally, we address Richard's counterclaim for negligence. Pursuant to section 1 of the Harter Act, 46 U.S.C.App. § 190 (1994), a carrier has a non-waivable duty, independent of any contractual duties, to effect a "proper delivery" of cargo entrusted to it.[6] *See Metropolitan Wholesale Supply, Inc., v. M/V Royal Rainbow,* 12 F.3d 58, 61 (5th Cir.1994); *English Elec. Valve Co. v. M/V Hoegh Mallard,* 814 F.2d 84, 87 (2d Cir.1987). Whether there has been a proper delivery is determined by what is customary at the port of delivery. *See Allstate Ins. Co. v. Imparca Lines,* 646 F.2d 166, 168 (5th Cir. Unit B May 1981).[7] Crowley

---

[6]The Carriage of Goods by Sea Act, 46 U.S.C.App. § 1303(6) (1994), governs a carrier's duty from the time of loading to the time of discharge; the Harter Act governs a carrier's duty from the time of discharge to the time of delivery. *See English Elec. Valve Co. v. M/V Hoegh Mallard,* 814 F.2d 84, 87 (2d Cir.1987).

[7]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

presented unrebutted evidence that, in Nicaragua, all shipments are given to the customs authorities, who in turn are expected to give the cargo to the intended recipient upon presentation of an original bill of lading. Consequently, Crowley cannot be considered negligent in regard to its statutory duty under the Harter Act.

## II.

Richard argues that because Crowley never properly delivered the cargo, Crowley must bear the cost of returning the cargo to Miami. Having concluded in the previous section that Crowley's delivery was proper, Richard's argument fails. Thus, Richard is liable for payment of shipping fees for the return of the damaged cargo.

## III.

Finally, we address the issue of attorneys' fees. Under the American Rule, attorneys' fees are unavailable to a prevailing party in the absence of certain common law and statutory exceptions or a contractual provision. See *Woodard v. STP Corp.*, --- F.3d ---- n.3 (11th Cir.1999) [No. 97-6581, Mar. 23, 1999]. Crowley relied on the following contractual provision in its successful motion for attorneys' fees:

> Freight, demurrage, and other charges shall be paid to Carrier in United States currency, without discount or setoff of any kind, including any claim for loss or damage to the goods, at such place and in such manner as the Carrier may direct. Such charges shall be paid in full regardless of any claim by Shipper that a tariff applies other than that under which the Carrier has assessed charges, or that the charges are unreasonable or unlawful under applicable law. Any such claim shall instead be pursued by a separate action before the Federal Maritime Commission, or other agency where the tariff sought to be applied by Carrier has been filed. Carrier shall be entitled to recover all costs of collection, including reasonable attorneys' fees and expenses.

Richard argues that Crowley's right to recover attorneys' fees, as expressed in the final sentence of the above paragraph, applies only to actions before the Federal Maritime Commission or similar agency. A plain reading of the provision suggests that this interpretation is untenable. The provision relates to the topic of the collection of charges—precisely the issue involved in this suit. It states that a shipper may not deduct any claims against Crowley from those charges, but must instead pursue those claims in an administrative proceeding. Finally, it states that Crowley is entitled to any costs incurred in collecting the charges. The provision in no way implies that Crowley must pursue its claims in administrative proceedings, nor does it

5

limit the collection of attorneys' fees to those incurred in administrative actions.  Therefore, the district court correctly included attorneys' fees in Crowley's damages award.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.