**BIGGE EQUIPMENT CO.,
et al., Plaintiffs,**

v.

**MAXPEED INT'L TRANSPORT CO.,
LTD., et al., Defendants.**

**No. 01–CV–1071 MJJ.**

United States District Court,
N.D. California.

Oct. 9, 2001.

David M. Salentine, San Francisco, CA, for Plaintiffs.

Harvey I. Wittenberg, Law Offices of Harvey I. Wittenberg, El Cerrito, CA, Gary A. Angel, Law Offices of Gary A. Angel, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANT MARINE TERMINAL CORPORATION'S MOTION TO DISMISS, OR ALTERNATIVELY MOTION FOR SUMMARY JUDGMENT

JENKINS, District Judge.

### INTRODUCTION

Before the Court is Defendant Marine Terminal Corporation's ("MTC") motion to dismiss, or alternatively, for summary judgment, on the basis of the running of the statute of limitations. The motion requires the Court to determine whether Plaintiffs Bigge Equipment Co. and Dongbu Insurance Co., Ltd. (collectively "Plaintiffs") are time-barred from bringing suit for damage caused to cargo, in part, by MTC. For the reasons stated below, MTC's motion is GRANTED.

### FACTUAL BACKGROUND

On or about February 24, 2000, Defendant Maxpeed International Transport Co., Ltd. ("Maxpeed") received at Pusan, Republic of Korea, a quantity of cargo consisting of one 1994 Daewoo–Grove telescopic truck crane, model DTC–35, for transportation and delivery by sea to Oakland, California, to Plaintiff Bigge Equipment Co. ("Bigge") in the same good order and condition. Maxpeed transported the goods to the Port of Oakland, California, where the goods came into possession of MTC as bailee, warehouseman, stevedore, and terminal operator.

On or about February 24, 2000, Maxpeed issued Biggie a bill of lading referred to as UX–00212 ("Maxpeed Bill"), under which the cargo was shipped on board an ocean-going vessel, voyage 0047E, operated by Defendant Hanjin Shipping Co., Ltd ("Hanjin"). Hanjin issued a second bill of lading, referred to as HJSCPUSA96536304 ("Hanjin Bill"). These two documents are not identical.

The vessel, voyage 0047E, arrived in Oakland, California and discharged the cargo from the vessel on March 11, 2000. MTC, as bailee, stevedore and terminal operator presumably took custody of the cargo at this time. While unloading the cargo from the vessel and onto a flatbed, the cargo fell on its side and sustained damage as a result of the cargo having a high center of gravity, and the instability in its packaging. On March 15, 2001, Plaintiffs filed suit for damages which, Plaintiffs alleged "occurred after discharge from the carrying vessel, but prior to delivery to [Bigge]," in the amount of $68,310.00.

MTC now moves to dismiss, or in the alternative for summary judgment, on grounds that Plaintiffs are time-barred by the one-year statute of limitations under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. §§ 1300 et seq. Specifically, MTC alleges that COGSA bars suit if not filed one year from the date the cargo is delivered, which MTC contends occurred on March 11, 2000, when the cargo was discharged. See Declaration of George T. Palmer ("Palmer Decl.") at ¶ 5 (stating that the cargo was discharged and damaged on March 11, 2000).

Plaintiffs counters that MTC applies the wrong statute of limitations because they bring suit under the Harter Act, 46 U.S.C.App. §§ 190 et seq., as opposed to

COGSA, and the Harter Act contains no statute of limitations. In addition, Plaintiffs argue that COGSA would not apply because it only covers the period from the time when the goods are loaded until they are discharged from the ship pursuant to 46 U.S.C.App. § 1301(e),[1] and here, the damage only occurred after the goods were discharged. Plaintiffs also argue that MTC is not covered by COGSA as the bailee, terminal operator and stevedore. In the alternative, Plaintiffs argue that even if COGSA did apply and MTC was covered thereby, the statute of limitations only began accruing on March 21, 2000, the date the cargo was physically removed from the terminal, or, according to Plaintiffs, the date of delivery.

MTC replies that COGSA applies to this matter because COGSA applies to every contract of carriage of goods by sea in foreign commerce to or from ports in the United States, and that here the cargo traveled between Korea and the United States, as indicated by both the Maxpeed and Hanjin Bills. In addition, MTC contends that COGSA covers MTC as the terminal operator, bailee and stevedore through a provision in the Hanjin Bill, known as the Himalaya Clause, which extends all limitations of liability as stated in the bill of landing to others, stating "every servant, agent and subcontractor ... and the agents of each shall have the benefit of all provisions herein for the benefit of the Carrier as if the provisions were expressly for their benefit ...." Finally, MTC argues that delivery was completed and the time began to accrue with respect to the COGSA statute of limitations at least as early as March 14, 2000 because courts have defined "delivery" under COGSA to occur when the recipient of the cargo receives notice of the discharge and has had a reasonable opportunity to inspect it for defects. MTC then submitted portions of the deposition of Nikola Juretic, a surveyor for Plaintiff Dongbu Insurance Co., Ltd. ("Dongbu"), where Juretic testified that both he and B. Reid Settlemier, president of Bigge, received notice of discharge and then went to the terminal to inspect the cargo for defects on behalf of Plaintiffs on March 14, 2000. *See* Deposition of Nikola Juretic at 38–41.

On July 10, 2001, the Court heard the parties on this motion. Plaintiffs protested their inability to respond to the submission of Juretic's testimony through which MTC imputed knowledge of the defects onto Plaintiffs by March 14, 2000, all of which MTC referenced for the first time in its reply. The Court, therefore, continued the hearing until September 11, 2001, to allow Plaintiffs to conduct further discovery on the issue of imputed knowledge, and to submit further briefing as to the issue of whether Plaintiffs could be imputed with the knowledge of Juretic and Settlemier through their visit of the terminal to survey the cargo.

On August 21, 2001, as directed by the Court, Plaintiffs filed their further briefing. It does not discuss, however, MTC's allegations that Plaintiffs were imputed with the knowledge of the defects on or before March 14, 2000. Nor does it provide any evidence which contradicted MTC's assertions that both Juretic and Settlemier were at the terminal on March 14, 2000, to survey the damage sustained by the cargo, and that both did indeed survey the cargo. Instead, Plaintiffs' entire supplemental briefing comprised of a discussion regarding "free time," five working days after discharge during which, according to Plaintiffs, the cargo is deemed held "undelivered" pursuant to Rule 23–I1 of the Hanjin Shipping East-

---

1. 46 U.S.C.App. § 1301(e) defines carriage of goods as "the period from the time when the goods are loaded to the time when they are discharged from the ship."

bound Freight Tariff FMC–200.[2] Pursuant to this "free time," Plaintiffs suggest that the statute of limitations under COGSA did not begin to accrue until, at the very earliest, the free time expired at midnight on March 17, 2000. Plaintiffs further state that they were unable to take delivery of the cargo during this free time because they had to wait for Hanjin and MTC to survey the cargo, which Plaintiffs allege did not occur until March 20, 2000.[3] Finally, Plaintiffs argue that they were unable to take delivery of the cargo because the cargo was broken up into pieces and could not be taken by Plaintiffs until March 21, 2000, when Plaintiffs physically removed the cargo.

MTC filed its response, dismissing the discussion regarding "free time" as irrelevant, and then identified those portions of Settlemier's deposition wherein Settlemier testified that he and Juretic went to the terminal on March 14, 2000, after being notified that the cargo had been damaged and inspected the cargo thoroughly. *See* Declaration of Gary Angel ("Angel Decl."), Exh. 1 (Deposition of B. Reid Settlemier) at 28, 34. In addition, Settlemier testifies that the survey conducted by Juretic was on behalf of Bigge and Dongbu, and that the purpose, according to Settlemier, for Settlemier to go to the terminal was to "assess the damage and to make sure [he] followed the proper procedure with which to file an insurance claim." *Id.* at 28, 34. Settlemier further testifies that he took notes detailing the damage to the cargo in his capacity of the president of Bigge and in the regular course of business. *See id.* at 35–36.

On October 1, 2001, the Court heard the parties again on this motion. At the hearing, Plaintiffs stated that delivery is defined as that time when a party has a reasonable opportunity to remove the cargo, which Plaintiffs contend occurs after expiration of the "free time" and when a party has a reasonable opportunity to "restore order from chaos," both of which did not occur until after March 20, 2000. In addition, although both parties agree that the damage to the cargo occurred while it was being unloaded from the vessel onto a transportation flatbed, Plaintiffs claim the damage occurs after the cargo was discharged, whereas MTC claims that the damage occurred during discharge. Despite the dispute, both parties claimed that

**2.** The Hanjin Tariff appears to be a contract with which Hanjin binds its customers to certain terms. Rule 23–11, entitled "Free Time and Demurrage" states, in relevant part, "[a]ll containers other than temperature controlled and/or bulk tank containers held with cargo at carrier's discharge port CY, undelivered for five (5) days, Saturdays, Sundays and holidays excluded, after the carrying vessel has completed discharge, will be subject to demurrage charges as indicated below, whether the shipment therein occupies a full container or not. Free time will commence at 8:00 a.m. on the first business day after completion of discharge of the vessel and shall expire at midnight on the fifth day, Saturdays, Sundays and holidays excluded."

**3.** Plaintiffs' attorneys, David M. Salentine, in support of his further briefing, filed a declaration as to the issues Plaintiffs argued: (1) the cargo was subject to free time, and thereby considered undelivered, until at least March 17, 2000; and (2) Hanjin and MTC had not surveyed the cargo until March 20, 2000, which then lead to the further delay in delivery of the cargo to Bigge. MTC objects these portions of Salentine's declaration on, primarily, a relevancy and hearsay basis, and on grounds that the statements made constitute improper legal conclusions, and that Salentine lacks personal knowledge as to the matters discussed. The Court agrees that Salentine lacks personal knowledge as to much of the items enumerated in his declaration, which appears to be an extension of Plaintiffs' brief as opposed to a declaration. In addition, the Court agrees with MTC as to the relevancy of the "free time" and the fact, if true, that MTC and Hanjin did not complete their independent survey until March 20, 2000. It discusses it further below.

the timing of the damage is not relevant where, as here, the one year statute of limitation under COGSA applies to bar litigation from the date of delivery.[4]

## LEGAL STANDARD

To withstand a motion for summary judgment,[5] the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. *See* Fed.R.Civ.P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In opposing summary judgment, the non-moving party is not entitled to rely on the allegations of the complaint. Instead, it "must produce at least some 'significant probative evidence tending to support the complaint.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The Court does not make credibility determinations with respect to evidence offered, and is required to draw all inferences in the light most favorable to the non-moving party. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts ...." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir.1980).

## ANALYSIS

Plaintiffs oppose MTC's motion, arguing the inapplicability of COGSA because (1) Plaintiffs bring their suit under the Harter Act as opposed to COGSA; and (2) MTC is not covered by COGSA as a bailee, terminal operator and stevedore. In the alternative, Plaintiffs argue that the statute of limitations did not begin accruing until March 21, 2001, the date the cargo was removed by Bigge from the terminal, or, at the very earliest, March 17, 2001, when the "free time" expired pursuant to Rule 23–I1 of Hanjin's tariff. The Court reviews each of Plaintiffs arguments in turn below.

---

4. In light of the parties' assertion that the issue of whether the damage occurred after or during discharge is irrelevant, the Court declines to further address Plaintiffs' argument, raised in their opposition, that MTC is barred from seeking application of COGSA because it only covers the period from the time when the goods are loaded until they are discharged from the ship pursuant to 46 U.S.C.App. § 1301(e), and here, the damage only occurred after the goods were discharged. Moreover, to the extent that the parties agree damage occurred while the cargo was being unloaded from the vessel, cargo is not discharged within the meaning of COGSA and,

therefore, COGSA and its statute of limitations still apply. *See Hoegh Lines v. Green Truck Sales, Inc.*, 298 F.2d 240, 242 (9th Cir.1962) (finding cargo not discharged when damaged in the process of being unloaded from a vessel onto a lighter, a large open flat-bottomed boat, used in loading and unloading ships).

5. The Court converts MTC's motion to dismiss into a motion for summary judgment, which MTC moved on in the alternative, in light of the extrinsic evidence upon which the motion relies.

## I. Applicability of COGSA

■ The determination of whether plaintiffs are time barred turns on the question of whether COGSA applies. Congress passed the Harter Act and COGSA to counteract the persistent efforts of carriers, who usually drafted of bills of lading, to insert all embracing exceptions to liability. *See Tessler Bros. Ltd., v. Italpacific Line,* 494 F.2d 438, 444–45 (9th Cir.1974) (internal citations omitted). To the extent that the Harter Act governed international trade leaving from or entering American ports, it was superseded in 1936 by the enactment of COGSA. *See* 46 U.S.C. § 1300 (providing that "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of [COGSA]."); *see also North River Ins. Co. v. Fed Sea/Fed Pac Line,* 647 F.2d 985, 987 (9th Cir.1981). Now, COGSA applies to shipments of goods between an American and foreign port, and the Harter Act applies only to shipments between domestic ports.[6] *See North River,* 647 F.2d at 987.

It is undisputed that the shipment here originated in Pusan, Republic of Korea and was discharged at a terminal in Oakland, California. In addition, both the Maxpeed and Hanjin Bill contain provisions which state that COGSA applies. Therefore, the Court finds that COGSA applies.

## II. COGSA Protection for MTC as Terminal Operator, Stevedore, and Bailee

■ The next critical question is whether the limitations of liability under COGSA can be extended to MTC as terminal operator, stevedore, warehouseman, and bailee. Courts have found that the terms and provisions of a bill of lading can extend COGSA protection to its agents through clauses known as Himalaya clauses. *See Tessler Bros.,* 494 F.2d at 444 (finding that 46 U.S.C.App. § 1303(6) provides that in special cases a carrier, its agents, and a shipper may enter into any agreement as to their respective rights and liabilities). "Whether an entity is an intended beneficiary of a Himalaya Clause depends upon the contractual relation between the party seeking protection and the ocean carrier, as well a the nature of the services performed compared to the carrier's responsibilities under the carriage contract." *Mori Seiki USA, Inc. v. M.V. Alligator Triumph,* 990 F.2d 444, 450 (9th Cir.1993); *see also Thiti Lert Watana Co., Ltd. v. Minagratex Corp.,* 105 F.Supp.2d 1077, 1081 (N.D.Cal.2000) (extending protection to customs and forwarding agent where Himalaya Clause explicitly stated that it would be extended to "any person of whose services [the Freight Forwarder] makes use for the performances of the contract.").

Paragraph 6(a) of the Hanjin Bill provides, in relevant part, that:

> The Carrier shall be entitled to subcontract on any terms the whole or any part of the handling, storage or carriage of the Goods and any and all duties whatsoever undertaken by the Carrier in relation to the Goods. Every servant, agent and sub-contractor (including all interest engaged in the owning or chartering of the Vessel, *stevedores, warehouseman,* and other independent contractors) and the agents of each shall have the benefit of all provisions herein for the benefit of the Carrier as if the provision were expressly for their benefit: and in entering into this contract of carriage, the Carrier does so not only on his own behalf but also as agent for all

---

**6.** Parties to bills of lading may also agree to the application of COGSA for shipments between domestic ports. *See Tessler Bros.,* 494 F.2d at 444–45.

such servants, agents and sub-contractors to the fullest extent permitted by the law applicable to Himalaya Clauses. (emphasis added). Furthermore, paragraph one in the Hanjin Bill defines "subcontractor" as expressly including "stevedores." Here, MTC was the stevedore, warehouseman, bailee and terminal operator, all of which are entities expressly enumerated in the Himalaya Clause of the Hanjin Bill. Even if the Hanjin Bill had not so clearly identified MTC as a beneficiary of the COGSA protections, it is clear that MTC, as stevedore, bailee and terminal operator, performed services which were necessary to the carrier so that it could perform its responsibilities under its bill. Therefore, the Court finds that the Himalaya Clause in the Hanjin Bill extends COGSA protections, including the one-year statute of limitations, to MTC.

### III. One Year Statute of Limitations— "Delivery"

■ The Court must now look at when time began to accrue. 46 U.S.C.App. § 1303(6) provides that "[i]n any event the carrier and the ship shall be discharged from all liability in respect of loss or damage *unless* suit in brought within one year after delivery of the goods or the date when the goods should have been delivered: Provided, That if a notice of loss or damage, either apparent or concealed, is not given as provided for in this section, that fact shall not affect or prejudice the right of the shipper to bring suit within one year after the delivery of the goods or the date when the goods should have been delivered." The parties dispute what constitutes delivery for the purposes of accrual. ·

MTC argues that the cargo was delivered either on March 11, 2000, the date by which the cargo was discharged. Plaintiffs claim that the cargo was not delivered until March 21, 2000, the date on which Bigge took physical possession of the car-

go. Courts have found that " 'delivery' does not mean actual physical transfer, neither does it mean discharge from the ship, without more." *National Packaging Corp. v. Nippon Yusen Kaisha,* 354 F.Supp. 986, 987 (N.D.Cal.1972). It is clear, therefore, that March 11, 2000, the date by which the cargo was discharged, does not dictate when time begins to accrue. Likewise, March 21, 2000, the date on which Bigge removed the cargo from the terminal is not the correct date. Instead, the appropriate date is somewhere in between.

■ Plaintiffs provide an alternative date of March 17, 2000, when "free time" expired, as the date upon which time begins to accrue because, according to Rule 23–I1, cargo is considered "undelivered" during "free time." The Court finds no corollary between "free time" and the accrual of time for purposes of the statute of limitations under COGSA despite Plaintiffs' insistence to the contrary. Instead, it finds that "free time" merely constitutes that time during which Hanjin may not charge its clients demurrage fees, should the cargo continue to occupy space five days after being discharged from the vessel. *See J. Kinderman & Sons v. Nippon Yusen Kaisha Lines,* 322 F.Supp. 939, 942 (E.D.Pa.1971) (finding " '[f]ree time' is merely the period of time during which a consignee can allow his goods to remain on a pier before it must start paying additional charges. It has nothing to do with whether a carrier has exercised reasonable care in discharging goods from his ship, ... and has no relevance to the question of what constitutes a proper delivery of the cargo.") (internal citations omitted). In addition, neither Rule 23–I1 nor the case cited by Plaintiffs, *Yang Ming Marine Transport Corp. v. Okamoto Freighters, Ltd.,* 259 F.3d 1086 (9th Cir.2001), indicates to the Court that no delivery may occur prior to the expiration of "free time."

The Court, therefore, finds Plaintiffs discussion regarding "free time" unpersuasive.

Instead, the Court finds that "delivery" under COGSA occurs when the recipient of the cargo receives notice of the discharge and has had an opportunity to inspect it for defects. *See Orient Atlantic Parco, Inc. v. Maersk Lines,* 740 F.Supp. 1002, 1005 (S.D.N.Y.1990) (citing *National Packaging,* 354 F.Supp. at 987 ("rejecting the actual transfer definition and adopt[ing] the discharge + notice + opportunity to receive formula of 'proper delivery.'")). Here, MTC provides the Court with the testimony from both Juretic, Dongbu's marine surveyor, and Settlemier, President of Bigge, that both Juretic and Settlemier were physically present at the terminal in Oakland, with full notice of the arrival of the cargo, and were engaged in an inspection of the goods on March 14, 2000. Settlemier testified that he thoroughly inspect-

ed the goods in his capacity as president of Bigge, taking detailed notes and assessing the damage for insurance purposes, and that Juretic inspected it in his capacity as the marine surveyor for Dongbu.

As the president of Bigge, it is clear that Settlemier's knowledge could be imputed to Bigge. Likewise, as the marine surveyor of Dongbu, Juretic is considered an agent of Dongbu, and his knowledge can be imputed to it. *See A.S.T., U.S.A., Inc. v. M/V Franka,* 981 F.Supp. 937, 941 (D.Md.1997) (characterizing the plaintiff's marine surveyor as its agent and imputing the surveyor's knowledge to the plaintiff). Because time begins to accrue when Plaintiffs have notice and have had a reasonable opportunity to inspect, and here Plaintiffs were advised of the damage and did indeed inspect the cargo, through Settlemier and Juretic, on March 14, 2000, the Court finds that time began to accrue for this action on March 14, 2000, at the very latest.[7] By

---

7. Plaintiffs counter MTC's contention that delivery occurs when Plaintiffs had notice of the cargo's arrival and had a reasonable opportunity to inspect, arguing that the cargo could not have been delivered despite Plaintiffs' inspection of the same on March 14, 2000, because Hanjin and MTC had not had the opportunity to inspect the cargo until March 20, 2000. In addition, Plaintiffs argue that it could not have removed the cargo on March 14, 2000 because it had been broken up into many pieces and lay strewn on the ground. There is no requirement that all parties be allowed to survey cargo before it is considered "delivered" under COGSA. Indeed, although the Court was unable to find authority directly on point, courts have found delivery to have occurred even when customs officials prohibit consignee from taking possession of its cargo. *See A.S.T.,* 981 F.Supp. at 941 (finding fact that customs officials prohibited the plaintiff from taking possession of the cargo until January 11, 1996, immaterial in light of the undisputed evidence that the plaintiff's surveyor had earlier inspected and submitted reports of damage). To the extent that the time during which consignees are prohibited from removing cargo is immaterial when determining delivery, the Court finds

that the courtesy exercised to third parties in allowing them to inspect is also immaterial. Also, the fact that the cargo lay in pieces on the ground is immaterial where, as here, the parties were able to actually inspect the goods. This case is factually distinguishable from that cited by Plaintiffs during the October 1 hearing, *Atlantic Mutual Ins. Cos. v. M/V Balsa 38,* 695 F.Supp. 165 (S.D.N.Y. 1988), for the proposition that Plaintiffs could not take delivery of the cargo because it lay in pieces on the ground because "effective delivery does not occur until the consignee has had a reasonable time to restore order from chaos." *Id.* at 170. While *Atlantic Mutual* did state those exact terms, the court did not broadly state the terms to apply in all instances. Instead, the court made the statement in the context of the fact that the cargo was not, as here, a single item, but instead comprised of many palletized bales of twine of different markings and physical characteristics, issued under six separate bills of lading, which recited and conformed to those different markings and physical characteristics, and that under those circumstances, the "carrier does not make effective delivery of the cargo to the consignee by simply dumping the mess onto a pier for the consignee to sort out." *Id.* The

initiating action on March 15, 2001, Plaintiffs filed this suit at least one day late. Therefore, the action is untimely and Plaintiffs are time-barred from suit against defendant MTC.

## CONCLUSION

For the foregoing reasons, the Court GRANTS MTC's motion for summary judgment.

**IT IS SO ORDERED.**

case here is factually distinguishable in that the cargo comprised on one crane, and Plaintiff did indeed "sort things out" on March 14, 2000, when it completed the inspection. As such, Plaintiffs reliance on *Atlantic Mutual* is misplaced.