**CAPITAL PARTNERS INTERNATIONAL VENTURES, INC, et al. Plaintiffs,**

v.

**DANZAS CORPORATION, Defendant.**

**Danzas Corporation Plaintiff,**

v.

**Capital Partners International Ventures, Inc, Defendant.**

**No. C 02–5979 JL.**

United States District Court, N.D. California.

March 8, 2004.

Vernon C. Goins, Taylor & Goins LLP, Oakland, CA, for Plaintiff.

Jeffrey Glick, Kipperman & Johns, San Francisco, CA, for Defendant.

## SUMMARY Judgment for Defendant Granting Docket # 35

LARSON, United States Magistrate Judge.

### Introduction

Before the Court is Defendant's motion to dismiss Plaintiffs' complaint pursuant to Rule 12(c), Federal Rules of Civil Procedure. This Court has jurisdiction under 28 U.S.C. § 1333. The motion came on for hearing on February 25, 2004. Vernon Goins of Taylor & Goins appeared for Plaintiffs. Jeffery Glick of Kipperman & Johns appeared for Defendant. The Court considered the written pleadings and the oral arguments of counsel and hereby orders that the motion is granted. Summary judgment is hereby entered for Defendant.

### Factual Background

This case is about freight loss and damage and unpaid freight and storage fees. Plaintiffs ("Capital") contend that they entered into a series of oral and written agreements with Defendant ("Danzas") on March 28, 2000, which required Danzas to ship Capital's property valued at $50,000 from Creutzwald, Belgium to Oakland, California. Capital later claimed that the shipment consisted of business inventory, personal property, and family heirlooms, including a suit of armor, family clothing, children's toys, business records, and a wedding gown. The contract required Danzas to perform all necessary steps to ensure the delivery of the property in its original condition. Added protections entailed inspections, safe-handling procedures, and promptly notifying Capital of any problems, delays, and delivery dates.

Danzas denies entering into the oral and written agreements alleged in the third amended complaint. Rather, Danzas asserts the only agreement is set forth in the Bill of Lading, which incorporates the Carriage of Goods By Sea Act ("COGSA"), 46

U.S.C. § 1300 et. seq. (Declaration of Phil Rathgeb in Support of Opposition By Danzas to Motion to Remand, Exhibit A). In addition, Danzas contends that it was unaware the cargo contained personal property and heirlooms. Capital declared in the Bill of Lading the contents of the general cargo as follows: a dry container containing firelogs, illumination chargeable garden logs made of wood and paraffin, alimentation for garden logs, special barbeque, firestarter and chimney cleaner containing chimney cleaning powder made of 95% ammonium chlorine, sodium chlorine and copper sulfate.

On May 10, 2000, Capital received a shipping bill in the amount of $4,616.87, which it argued substantially exceeded Danzas quoted price of $2,240. Danzas admits quoting a general cargo price in the amount of 5,075 French francs, which at the time had an approximate value of $2,240 in United States currency. Danzas insists that the price was quoted in francs, not dollars; and it was not responsible for currency fluctuations, which resulted in the price increase.

Danzas stored Capital's property with a trucking company from May until July 2000. Capital did not pay the bill, and Danzas incurred storage fees in the amount of $4,484.00. The trucking company refused to continue to store the shipment because it believed toxic fumes were emanating from the container. The shipment was moved to Danzas' warehouse.

In June 2000, Danzas rejected Capital's offer to pay the outstanding bill in monthly installments of $500. Danzas denies this specific allegation but admits only that Capital offered to make payment arrangements which were unacceptable and not within the terms of the contract. In September 2000, Danzas was unable to contact Capital either by telephone or mail and because of the fumes the cargo was destroyed.

In October 2000, Capital contacted Danzas to set up a payment plan. Danzas however, found this payment plan also unacceptable and informed Capital that it had destroyed the property because it was leaking toxic fumes. Capital claims Danzas offered to accept the $500 installation payment plan originally offered in June 2000.

### Procedural History

Capital is a California corporation. Danzas is a New York corporation with an office in Brisbane and substantial business in California. Capital filed suit on August 31, 2001, in San Mateo Superior Court for breach of contract. The initial complaint was served on September 12. Capital filed an amendment to the complaint on October 10. On October 18, Capital filed a notice of default and the second amended complaint. On November 5, Capital's request for entry of default was granted in the amount of $326.00 in costs. On February 28, 2002, Capital's request for entry of default judgment was granted in the amount of $53,034.092. On April 18, Capital agreed to set aside the default judgment. In exchange, Danzas accepted service of process for this suit. The state court dismissed the defendant from the complaint on July 17, 2002, for lack of personal jurisdiction.

San Mateo Superior Court granted Capital's leave to file a third amended complaint, effective December 16, 2002. Danzas accepted the summons and the complaint. The third amended complaint alleges Danzas breached the contract and the implied covenant of good faith and fair dealing by: demanding a shipping price that substantially exceeded the agreed-upon amount; refusing to deliver Capital's goods; and intentionally destroying Capital's property without providing notice or warning. In addition, the complaint avers that Danzas' efforts to extort monies, refusing to deliver the goods and intention-

ally destroying Capital's property without providing notice or warning caused Capital to suffer emotional and physical distress. Capital also contends that Danzas failed to deliver the cargo from May through August 2000, and then destroyed it, affecting some of Capital's property. Capital also alleges it suffered severe economic damages as a result of Danzas' failure to exercise due care and skill in the billing, shipping, and handling of business inventory, personal property, and family heirlooms.

On December 31, 2002, Danzas removed the case from the San Mateo Superior Court to the United States District Court for the Northern District of California alleging federal jurisdiction under the Carriage of Goods by Sea Act ("COGSA.") On January 6, 2003, Danzas filed an answer to the third amended complaint and a counterclaim for the outstanding shipping bill and storage fees it incurred as a result of Capital's failure to pay for the shipment. On January 29, 2003, Capital filed an answer to the counterclaim. On January 30, Capital filed a motion to remand the action to state court for lack of subject matter jurisdiction. Both parties consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c). The hearing on the Motion to Remand came on March 12, 2003. Capital's motion to remand was denied.

Danzas moves to dismiss this action under Federal Rule of Civil Procedure 12(c) for failure to state a claim for which relief can be granted because the one-year statute of limitations in the Bill of Lading precludes Capital from recovery.

### Jurisdiction

■ Admiralty disputes are governed by federal maritime law. Capital argues that its complaint does not arise under federal law, nor presents any federal question on its face and therefore is not governed by federal law. Capital alleges state law claims based on the Bill of Lading ("Bill") and letters between the parties discussing the terms of the delivery. While the Court finds Capital's citation of the law useful, it disagrees with its conclusion. Capital states, "federal courts must apply federal law to those cases in which a well-pleaded complaint establishes [ . . . ] that federal law creates the cause of action [ . . . ]" citing *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

This suit is within this Court's Admiralty jurisdiction and is governed by federal maritime law because it involves claims by the shipper, Capital, against the ocean carrier, Danzas, arising from alleged breach of contract of carriage. Section 1333 of Title 28 United States Code Annotated states: The district courts will have original jurisdiction, exclusive of the courts of the States of "any civil case of Admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." This case therefore arises under federal law pursuant to 28 U.S.C.A. Section 1333.

■ Jurisdiction of U.S. Federal Courts over ocean carriage claims cannot be relinquished by executory provisions in a Bill limiting admiralty jurisdiction. The Bill states, "the contract evidenced by or contained in this Bill of Lading is governed by the law of Switzerland and any claim or dispute arising hereunder or in connection herewith shall be determined by the courts of Basel–Stade, Switzerland, and no other court." COGSA § 3(8) prohibits a Bill of Lading from relieving a carrier of its obligations or lessening a carrier's liability. 46 U.S.C.App. § 1303(8). In *Sky Reefer,* the Supreme Court found that COGSA § 3(8) does not prevent parties from agreeing to enforce obligations in a particular forum as long as liability for any loss or damage is not lessened through the

agreement. *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER* 515 U.S. 528, 529, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995). However, this Court finds that COGSA does not govern this dispute so this holding does not control the forum.

## Analysis

Defendant Danzas moves to dismiss Capital's third amended complaint under Rule 12(c), Federal Rules of Civil Procedure and asks this Court to grant judgment on the pleadings. A 12(c) motion challenges the sufficiency of the opposing party's pleadings.

 This Court may look only to the pleadings when granting a motion to dismiss under Rule 12(c). If matters outside the pleadings are presented to the court, the motion for judgment on the pleadings is converted into a summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989). Before summary judgment may be entered, the nonmoving party must be given notice and an opportunity to respond. Notice occurs when a represented party has reason to know the court will look outside of the pleadings. *Grove v. Mead School Dist. No. 354,* 753 F.2d 1528, 1533 (9th Cir. 1985.)

Capital had sufficient notice that this Court would look outside the pleadings, specifically to the Bill of Lading. The Bill of Lading was incorporated into Danzas' motion as Exhibit A. Danzas' in its motion characterized the Bill of Lading as the central agreement to this dispute. The motion was heard on February 25, 2004. At the start of the hearing, the Court notified tentatively ruled that the bill of lading controls this dispute and the one year statute of limitations in the bill began to toll at the time of delivery of the shipment. During the hearing both parties argued the relevancy of the Bill of Lading. Also, the court questioned both parties about relevant portions of the Bill of Lading. Capital had reasonable notice that this Court would look outside the pleadings. Capital had a reasonable opportunity to respond before this Court entered summary judgment.

Summary judgment is appropriate when there are no genuine issues of fact to be tried. In order to defeat summary judgment, the nonmoving party must present some evidence showing there is a genuine issue for trial. *Celotex .Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### 1. The Bill of Lading is the contract which binds the parties.

 In cases of common carriage, such as this one, a Bill serves three purposes; it is a receipt for the cargo, it is the contract of carriage, and it can be an indicium of title to the cargo. Sturley, Benedict on Admiralty (Matthew Bender 2000), "Bills of Lading," 2A:31, 4–1, citing *Pollard v. Vinton,* 105 U.S. 7, 15 Otto 7, 26 L.Ed. 998 (1881). The Bill is a contract between the shipper and carrier and continues to govern the rights and obligations of parties until delivery. The Bill is the agreement central to Capital's claim for relief.

### 2. This matter is governed by the Harter Act (46 U.S.C.App. § 190, et seq.)

The Harter Act of 1893 ("Act") was the first legislation to address the conflicting interests of shippers and carriers. Historically, carriers have enjoyed a stronger bargaining position in relation to shippers as evidenced by expansive exculpatory clauses incorporated in the Bill of Lading. The Act prevent the shipper from adding stipulations relieving liability. Any such clauses are deemed null and void.

The Harter Act's based on an international law. In 1936, the Brussels Conven-

tion drafted model rules of liability between shippers and carriers, known as the Hague Rules. In the United States, the Hague Rules were incorporated into domestic law with the enactment of the Carriage of Goods by Sea Act ("COGSA".) The Harter Act and COGSA are similar in purpose and content, because the drafters of the Hague Rules used the Harter Act as a reference.

COGSA governs all international contracts for carriage of goods by sea from and to U.S. ports and foreign ports. 46 U.S.C.App. § 1300, et seq. (1936). Like the Harter Act, COGSA allocates risk between the shipper and carrier in carriage disputes. The United States Supreme Court has found that the purpose of COGSA is to "establish uniform ocean bills of lading to govern the rights and liabilities of carriers and shippers inter se in international trade." *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 301, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959).

■ Defendant argues that COGSA governs this matter because COGSA superseded the Harter Act in 1936. While Defendant is correct that COGSA applies to international trade leaving and entering American ports, COGSA's scope is limited and does not apply to the case at bar. Admittedly, the law is confusing as to when COGSA or the Harter Act applies. There is a line of cases holding that the Harter Act governs only domestic shipments.[1] The Court does not find this line of authority persuasive for the reasons discussed below.

The literal language of COGSA states that the Harter Act governs this matter. COGSA governs only international ocean trade from the time the goods are loaded onto the ship, until the time they discharged. This is known as the tackle-to-tackle period. Section 12 of COGSA states:

> Nothing in this Act shall be construed as superseding any part of the [Harter Act] or of any other law which would be applicable in the absence of this Act, insofar as they relate to the duties, responsibilities, and liabilities of the ship or carrier prior to the time when the goods are loaded on or after the time they are discharged from the ship.

46 U.S.C.App. § 1311(2003). The statute explicitly states that COGSA does not supersede the Harter Act in all international trade cases.

Case law also establishes that the Harter Act governs this matter. Defendant cites *North River*, which states "[t]he Harter Act only governs domestic trade." *North River Insurance Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 987 (9th Cir.1981) ("The Harter Act therefore only governs domestic trade. COGSA was passed to further and to strengthen the purposes served by the Harter Act.") *North River* is distinguishable from the case at bar because that case involved cargo damaged on the ship, not after the discharge. *Id.* Other courts have also held that the Harter Act, not COGSA, applies after the tackle-to-tackle period.[2]

This Court finds the literal language of COGSA and subsequent case law compel-

---

1. *North River Insurance Co. v. Fed Sea/Fed Pac Line*, 647 F.2d 985, 987 (9th Cir.1981). See also, *Bigge Equip. Co. v. Maxpeed Int'l Transp. Co.*, 229 F.Supp.2d 968 (N.D.Cal. 2001).

2. *Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444 (9th Cir.1993)(finding

bill of lading extended time period for COGSA beyond the "tackle to tackle" provision); *Thiti Lert Watana Co. v. Minagratex Corp.*, 105 F.Supp.2d 1077, 1082–83 (N.D.Cal.2000)(holding COGSA can be extended by contractual agreement beyond the cargo's discharge from the ship); *Fox & Assocs., Inc. v. M/V Hanjin Yokohama*, 977

ling. The dispute at bar arose after the goods were discharged from the ship, after the tackle-to-tackle period. Capital does not claim the goods were damaged or destroyed during the tackle-to-tackle period. For these reasons, the Harter Act governs this dispute.

### 3. The bill of lading does not extend COGSA to this dispute

██ Danzas argues that provision 12, as a paramount clause of the Bill of Lading, extends the application of COGSA to matters beyond the tackle-to-tackle period. To contractually extend COGSA beyond the tackle-to-tackle period, the terms must be included in a "Paramount Clause" in the Bill. 46 U.S.C.App. § 1307 (2003); *Mori Seiki USA v. M.V. Alligator Triumph*, 990 F.2d 444, 447 (9th Cir.1993); *Thiti Lert Watana v. Minagratex Corp.*, 105 F.Supp.2d 1077, 1079 (N.D.Cal.2000).

This Bill includes a Paramount Clause in provision 12, which states:

> If and to the extent that the provisions of the Harter Act of the United States of America 1893 would otherwise be compulsorily applicable to regulate the Carrier's responsibility for the goods during any period prior to lading on or after discharge from the vessel, the *Carrier's* responsibility shall instead be determined by the provisions of 13 and 14 below, *but if such provisions are found to be invalid* such responsibility shall be subject to COGSA.

(Def.Ex. A). Emphasis added.

██ This language states that COGSA applies only if provisions 13 and 14 are

invalid. This Court finds provisions 13 and 14 to be valid under the Harter Act. The Act regulates the carrier's responsibility for the goods after discharge. The Act permits reasonable limitations on liability. Provision 13 limits Danzas' liability and Provision 14 limits the amount of compensation Danzas would pay if it were to be found liable. Limiting Danzas' liability to periods when Danzas has custody and control over the cargo before delivery, as paragraph 13.1 does, is reasonable. Paragraph 14, which limits the amount of compensation to what is required by international convention or domestic law, is also reasonable. Because paragraphs 13 and 14 are valid, this Court finds that provision 12 of the bill of lading does not extend COGSA to this matter.

### 4. The statute of limitations in the bill of lading precludes Plaintiffs from recovery

██ Danzas argues that the one-year statute of limitations in the Bill precludes Capital from any recovery. The Harter Act itself does not impose a statute of limitations on carrier claims; however, a reasonable provision, such as the one-year limitation found in COGSA, limiting the shippers' time to file suit, may be upheld. *Queen of the Pacific*, 180 U.S. 49, 53, 21 S.Ct. 278, 45 L.Ed. 419 (1901); *Western Gear Corp. v. State Marine Lines, Inc.*, 362 F.2d 328 (9th Cir.1966).

Section 24 of the Bill states, "In any event the Carrier shall be discharged of all liability under this Bill of Lading unless suit is brought within one year after the delivery of the goods or the date when the

F.Supp. 1022, 1026 (C.D.Cal.1997)(finding the paramount clause in the bill of lading properly extended COGSA); *Gamma–10 Plastics v. American President Lines, Ltd.*, 32 F.3d 1244, 1249, (8th Cir.1994)(holding COGSA supersedes the Harter Act only with regard to the time a shipper's goods are on board a

carrier's ship); *Allied Chemical International v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482 (2nd Cir.1985); *Servicios–Expoarma, C.A. v. Industrial Maritime Carriers*, 135 F.3d 984, 992 (5th Cir.1998); *Crowley American Transp. Inc. v. Richard Sewing Mach. Co.*, 172 F.3d 781, 785 (11th Cir.1999).

goods should have been delivered." In its motion to dismiss, Danzas alleges and Capital does not dispute that the goods were delivered and ready to be picked up on May 10, 2000 and in July 2000. Capital filed suit on August 31, 2001, more than one year after "delivery."

 Next, the Court must determine when delivery occurred in order to establish when the time began to toll. Delivery under the Harter Act can be actual or constructive. In this matter, actual delivery was never perfected, so the Court must determine when constructive delivery occurred The Harter Act defines constructive delivery substantially the same as COGSA. *Isthmian Steamship Co. v. California Spray–Chemical Corp.*, 300 F.2d 41 (9th Cir.1962). Goods are constructively delivered once they are placed upon a fit wharf and the consignee receives both due and reasonable notice that the goods have been discharged and a reasonable opportunity to remove them. *Richardson v. Goddard (The Tangier)*, 64 U.S. 28, 39, 23 How. 28, 16 L.Ed. 412 (1859) (holding that the cargo is delivered once due and reasonable notice is given to the consignee such that the consignee has a fair opportunity to arrange for proper care and custody of the goods); *The Eddy*, 72 U.S. 481, 495, 5 Wall. 481, 18 L.Ed. 486 (1866); *Orient Overseas Line v. Globemaster Baltimore, Inc.*, 33 Md.App. 372, 383, 365 A.2d 325 (1976) citing *National Packaging Corp. v. Nippon Yusen Kaisha* (N.Y.K.Line), 354 F.Supp. 986, 987 (N.D.Cal.1972). Danzas alleges and Capital does not deny that the shipment was ready for delivery on May 10, 2000. By July 2000 Danzas refused to deliver the goods without being paid. Even assuming that constructive delivery occurred as late as July 31, 2000, Capital did not file suit until August 31, 2001, a month after the one-year statute of limitations had run. Consequently, Capital's claim is time-barred and must be dismissed.

**5. This Court declines jurisdiction over Danzas' cross-complaint under state law.**

 Danzas filed a cross-complaint under state law against Capital for storage fees incurred after Capital refused to accept delivery of the goods. The Court may decline jurisdiction of state law claims when all federal claims are dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218, (1966) (stating "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties[. . .]"). Danzas' state law cause of action for storage fees arose after constructive delivery. Therefore any remedy for the storage fees is governed by state law, not the Harter Act. Consequently, this Court dismisses Danzas' counter-claim without prejudice.

### Conclusion and Order

The Court considered the papers and arguments presented by the parties and for good cause it is hereby ordered that Summary Judgment is granted for Defendant. Plaintiff's complaint is dismissed with prejudice. Defendant's cross-complaint is dismissed without prejudice. The clerk shall close the file.