## LA VIDA MARINE CENTER, L.P., Plaintiff
## v.
## THOMAS B. ZELLERS, Defendant/Third-Party, Plaintiff
## v.
## BEAL BANK and LPP MORTGAGE, LTD., Third-Party, Defendants

Civil No. 2005-10

District Court of the Virgin Islands

Division of St. Thomas and St. John

July 18, 2006

*For La Vida Marine Center, L.P., Plaintiff*: JOHN H. BENHAM, ESQ., St. Thomas, U.S.V.I.

*For Thomas Zellers, Defendant/Third-Party Plaintiff*: DAVID A. BORNN, ESQ., St. Thomas, U.S.V.I.

*For Beal Bank and LPP Mortgage, Third-Party Defendants*: RICHARD H. DOLLISON, ESQ., St. Thomas, U.S.V.I.

GOMEZ, *Judge*

## MEMORANDUM OPINION

(July 18, 2006)

The plaintiff, La Vida Marine Center, L.P. ("La Vida"), filed this action against Thomas B. Zellers ("Zellers"), invoking this Court's admiralty jurisdiction. That assertion has been challenged by Zellers.

## I. FACTUAL AND PROCEDURAL HISTORY

Some time prior to 2002, Zellers, a resident of St. Thomas, performed electrical work for two individuals, Jack and Darla D. Holmes (the "Holmes"). The Holmes did not pay Zellers for this work. Zellers subsequently filed a claim in the Territorial Court of the Virgin Islands against the Holmes to recoup his expenses. On October 15, 2001, the Territorial Court issued judgment against the Holmes for the sum of $1,888.50.

To satisfy the judgment, Zellers obtained a Writ of Execution from the Territorial Court, which authorized Zellers to obtain satisfaction for the judgment from the property of the Holmes. Thereafter, Zellers had the Holmes' sailing vessel, *Lobo de Mar,* seized. On December 6, 2001, Zellers removed the vessel from the water and placed it into dry storage pursuant to a lease with La Vida, which operates a vessel storage facility on St. Thomas. Zellers has never had an intention to return the boat to navigable waters. Rather, his only intention regarding storage was to keep the *Lobo de Mar* at La Vida for an indefinite period of time.

The terms of the storage lease set monthly storage fees for the *Lobo de Mar* at $495. The lease terms also include an automatic renewal clause

that operates to renew the lease every month unless and until one party gives the other written notice of an intent to terminate the contract.

From December, 2001, until March, 2002, Zellers paid the required storage fees to La Vida. In March, 2002, Zellers learned that LPP Mortgage, Ltd. ("LPP") held a first priority mortgage on the *Lobo de Mar*. Thereafter, Zellers ceased making payments to La Vida. He did not give La Vida written notice of his intention to terminate the storage contract. The vessel currently remains in La Vida's dry storage facilities. As of January 31, 2005, La Vida was owed over $18,465 in unpaid storage fees for the *Lobo de Mar*.

La Vida filed the present suit against Zellers in February, 2005, invoking this Court's admiralty jurisdiction. Zellers subsequently filed a third-party complaint against LPP and Beal Bank, LPP's servicing agent, seeking contribution for the *Lobo de Mar's* storage costs. LPP moved to dismiss the third-party complaint for failure to state a claim upon which relief can be granted. Thereafter, La Vida moved this Court for summary judgment.

La Vida argues that there is no dispute over any material fact pertaining to La Vida's claim that Zellers owes La Vida unpaid storage fees for the *Lobo de Mar*. Zellers counters that La Vida's claim is not one that falls under this Court's admiralty jurisdiction, and that this Court lacks jurisdiction over this action.

## II. DISCUSSION

Federal courts may entertain "any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1) (2005). Generally, a contract dispute that would otherwise be civil in nature sounds in admiralty if "the transaction relates to ships and vessels, masters and mariners, as the agents of commerce." *Kossick v. United Fruit Co.*, 365 U.S. 731, 736 (1961); *see also* 1 STEVEN FRIEDELL, BENEDICT ON ADMIRALTY, § 181 (7th ed. 2005) (discussing federal courts' admiralty jurisdiction). There are limitations to the general rule, however.

■ Contracts for the dry storage of maritime vessels can be considered maritime contracts subject to a federal court's admiralty jurisdiction. *See, e.g., Ziegler v. Rieff*, 637 F. Supp. 675, 677 (S.D.N.Y. 1986) (holding that contracts to repair and store vessels fall within a court's admiralty jurisdiction, regardless of whether the vessels are kept on land or in the water). However, to be considered a maritime contract, a vessel storage

749

contract must "relate to ships in their use as ships or to commerce or transportation in navigable waters." *Ford Motor Co. v. Wallenius Lines, M/V Atlantic Cinderella*, 476 F. Supp. 1362, 1365 (E.D.Va. 1979).

## III. ANALYSIS

The *Lobo de Mar* remains in La Vida's dry storage facilities today, nearly five years after it was removed from the water. During that period, the *Lobo de Mar* has never been returned to navigable waters.

█ Zellers entered into a contract with La Vida to store the *Lobo de Mar* until he received payment from Holmes on the judgment. Zellers had no plans to return the vessel to navigable waters in the event payment was even received. In *Orient Atlantic Parco v. Maersk Lines,* the plaintiffs placed items subject to a shipping contract into storage during a legal dispute over the items. *Orient Atl. Parco v. Maersk Lines,* 740 F. Supp. 1002, 1006 (S.D.N.Y. 1990). The *Orient* Court found that such storage was "not sufficiently related to maritime activity to invoke federal admiralty jurisdiction." *Id.* Zellers' contract with La Vida is no different. Like the plaintiffs in *Orient,* Zellers decided to place the *Lobo de Mar* in dry storage "for an indefinite period of time while the parties resolve[d] various contract disputes." *Id.* Such storage does not place the contract at issue here into this Court's admiralty jurisdiction.

█ Moreover, the storage contract between La Vida and Zellers does not relate in any way to the traditional storage of a ship for maritime purposes. *Cf. Am. E. Dev. Corp. v. Everglades Marina, Inc.,* 608 F.2d 123, 124 (5th Cir. 1979) (finding admiralty jurisdiction in contract for dry storage of vessels when the dry storage "was a substitute for wet mooring or docking"); *Omaha Indemnity Co. v. Whaleneck Harbor Marina,* 610 F. Supp. 154, 156-57 (E.D.N.Y. 1986) (upholding admiralty jurisdiction over dispute involving vessel stored for the duration of winter because "[a] winter storage contract ... certainly relates to a ship in its use as a ship"). Rather, the storage of the *Lobo de Mar* is purely a method to secure payment of a debt that has nothing to do with transportation in navigable waters. Such storage is "not sufficiently related to maritime activity to invoke federal admiralty jurisdiction." *Orient Atl.,* 740 F. Supp. at 1006. Accordingly, this Court does not have admiralty jurisdiction over La Vida's claims.

█ Absent admiralty jurisdiction, La Vida's claim can only be heard in this Court if it presents a federal question or if the parties are diverse.

28 U.S.C. §§ 1331-1332. Both La Vida and Zellers are citizens of the Virgin Islands, so the parties here are not diverse. 28 U.S.C. § 1332(a).[1] Additionally, La Vida does not raise a federal question before this Court. *See Fanning v. United States*, 346 F.3d 386, 388 (3d Cir. 2003) (remanding with instructions to dismiss a complaint that did not invoke a federal question).[2]

## IV. CONCLUSION

Accordingly, for the reasons stated above, this case will be dismissed for lack of subject matter jurisdiction. An appropriate [order] accompanies this memorandum.

---

[1] Because the parties are not diverse, the Court need not examine the other requirements for diversity jurisdiction. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004) (upholding, without addressing the jurisdictional amount, a district court's dismissal of case where the parties were not diverse at the time the suit was filed).

[2] Zellers has sought contribution from Beal Bank and LPP. "A third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant." *FDIC v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994) (quoting 6 C.A. WRIGHT, A. MILLER, M. K. KANE, FEDERAL PRACTICE AND PROCEDURE, § 1446, at 355-58 (1990). LPP and Beal Bank's liability depends on Zellers' liability, which no longer exists. Accordingly, Zellers' third-party complaint will be dismissed.